**THOMAS v. HUDDLESTON et al.**

No. 8273—Opinion Filed Oct. 10, 1916.

Rehearing Denied April 10, 1917.

Second Petition for Rehearing Denied May 22, 1917.

(164 Pac. 106.)

**1. Notice—Vendor and Purchaser—Statute —"Actual Notice."**

"The words 'actual notice' do not always mean in law what in metaphysical strictness they import. They more often mean knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts. One who purchases land with knowledge of such facts as would put a prudent man upon his inquiry, which if prosecuted with ordinary diligence would lead to actual notice of rights claimed adversely to his vendor, is guilty of bad faith if he neglects to make such inquiry, and is chargeable with the 'actual notice' he would have received."

**2. Notice—Facts Putting on Inquiry.**

"Whatever is notice enough to excite attention and put the party on his guard and call for inquiry is notice of everything to which such inquiry might have led. When a person had sufficient information to lead him to a fact, he shall be deemed conversant of it."

(Syllabus by Bleakmore, C.)

Error from District Court, Okfuskee County; Geo. W. Crump, Judge.

Action by Elnora Thompson, nee Elnora Barnett, against C. T. Huddleston, Scottie Herriford, C. H. Dixon, Porter Grimes, and T. M. Haynes to cancel certain conveyances as clouds upon plaintiffs title, in which Dixon and Grimes filed a cross-petition against Herriford and Haynes, and in which. after the death of the defendant Grimes, the action was revived by his widow, heirs, and administrator. Judgment for defendants. and plaintiff brings error. Reversed, with direction to enter judgment in favor of plaintiff canceling all of the deeds mentioned in her petition and quieting in her the title to the land involved.

Fred M. Carter. for plaintiff in error.

Wm. S. Peters. J. B. Patterson, and C. T. Huddleston, for defendants in error.

Opinion by BLEAKMORE, C. This action was commenced in the district court of Okfuskee county, on May 7, 1914, by Elnora Barnett, plaintiff, against C. T. Huddleston, Scottie Herriford. C. H. Dixon. Porter Grimes, and T. M. Haynes, defendants, to cancel certain conveyances as clouds upon her title to the land therein described, etc. Huddleston answered, denying possession and disclaiming any interest in the land. Haynes answered likewise. Dixon and Grimes answered. separately. denying generally the allegations of the petition, admitting the purchase of certain portions of the land involved from Scottie Herriford, and by way of cross-petition against her and T. M. Haynes, Scottie Herriford answered and she with defendant Haynes also answered the cross-petition. Pending its disposition in

the court below, defendant Grimes died, and the action was revived; his widow, heirs, and administrator being made parties. There was trial to the court resulting in judgment for defendants, from which plaintiff has appealed.

The lands involved, 160 acres, constitute the allotment of the plaintiff, Elnora Barnett, a citizen of the Creek Nation, who arrived at her majority, as shown by the enrollment records of the Commissioner to the Five Civilized Tribes, on January 16, 1912. On November 15, 1911, pursuant to an order of sale in a proceeding in the county court of Okfuskee county, 120 acres of the lands allotted to the plaintiff were sold by her guardian in separate parcels, 80 acres to Polly Barnett, her stepmother, and 40 acres to one D. J. Turner, for $2,400 and $1,040 cash respectively. On December 2, 1911, these sales were confirmed by order of court, and the guardian executed deeds to such purchasers. On the same day, D. J. Turner without consideration executed to Polly Barnett a conveyance of the lands described in the guardian's deed to him. Such conveyances were shortly thereafter recorded in the office of the register of deeds of Okfuskee county. No part of the consideration recited in the return of sale, order of confirmation, and the guardian's deed was ever paid.

In May, 1912, Polly Barnett approached one Lake Moore to borrow money, to be secured by a mortgage on said 120 acres. Whereupon, at the instance of Moore, he and Polly Barnett and her husband, James Barnett, the father of plaintiff, sought the opinion of the defendant Huddleston, an attorney at law, as to the validity of the title of Polly Barnett to such lands. Huddleston advised them that the guardianship proceedings were irregular, and that to clear the title the land should be resold upon proceeding in the county court, and that it would be best that Polly Barnett execute a quitclaim deed thereof to Moore, and also that the plaintiff, who it was claimed would soon thereafter become of age, execute a deed of conveyance describing said lands to Moore. Accordingly, on May 6, 1912, a deed was executed by the plaintiff to Lake Moore describing her entire allotment of 160 acres, for the recited consideration of $1,000. No part of such consideration was paid, nor was it contemplated by the parties that it should ever be paid. On the same day, there was filed in the guardianship proceedings in the county court a petition signed by Morris Barnett, purporting to act as the guardian of plaintiff, for the sale of her entire 160-

acre allotment; and on May 13, 1912, in said guardianship proceedings an order was made authorizing the sale thereof.

On May 29, 1912, Polly Barnett executed her deed describing said 160 acres of land to Lake Moore. No consideration passed to her for this conveyance.

On June 3, 1912, in said guardianship proceeding there was filed a return of sale by the guardian showing the sale of said 160 acres to Lake Moore for the sum of $1,000.

On July 8, 1912, the county court confirmed the sale of said land, it being recited in the order that the guardian appeared by his attorneys, Huddleston & Hockensmith, and that C. T. Huddleston raised the former bid to the sum of $2,000.

On July 17, 1912, Lake Moore, without consideration, executed his quitclaim deed describing said land to C. T. Huddleston.

On August 12, 1912, Morris Barnett, the purported guardian of the plaintiff, who had refused to execute a deed to Huddleston pursuant to the order of the county court of July 8th, confirming said sale, was, for that and other reasons, cited to appear before said court and show cause why he should not be removed from office.

On September 18, 1912, Huddleston sold said lands to the defendant Haynes, a negro real estate dealer of Boley, Okla., and his stenographer, Scottie Herriford; the latter appearing as sole grantee in the conveyance.

Thereafter, on September 21, 1912, Morris Barnett was induced to execute his deed as guardian to Huddleston; the consideration being $2,000.

In the guardianship proceedings subsequent to May 6, 1912, the law firm of which defendant Huddleston was a member appears as attorneys of record for the guardian, and Huddleston was allowed by the court and paid by such guardian the sum of $200 for his services.

We quote from the brief of defendants Huddleston and Herriford relative to the facts in the case as follows:

"In 1912, and while this land was in this condition, Polly Barnett and James Barnett, the father of the plaintiff in error, came to Lake Moore and wanted to borrow the money. Lake Moore then informed them that if C. T. Huddleston would say the title to the land was all right, he would make them a reasonable loan, but at no time did he contemplate making anything like the purchase price; and the said Lake Moore, Polly Barnett, and James Barrett came into the office of C. T. Huddleston and asked him to look over the title, and, after investigation, the said C. T. Huddleston informed them that the probate proceedings were very

irregular, having been carried through by some negro lawyers at Boley, and the said Lake Moore, Polly Barnett, and James Barnett then informed the said C. T. Huddleston that Elnora Barnett would be of age shortly, but the enrollment records were not produced, and the said attorney had no opportunity to ascertain whether she was of age or not, but said attorney advised them that, if they desired to straighten this title, the best way to do so would be for Polly Barnett to make a quitclaim deed to Lake Moore, and Elnora Barnett also make a deed to Lake Moore in order that the plaintiff in error, who was about to become of age, could not cloud the title while these proceedings were being carried through, and that, when the land was sold, all the outstanding clouds against their title would be in Lake Moore, and the announcement would be made at the sale that whoever purchased this land before they paid any money should have a quitclaim deed from Lake Moore.

"In pursuance to this agreement, deeds were executed by plaintiff in error and Polly Barnett to Lake Moore, and the land was duly and regularly sold through the county court for Okfuskee county, Okla., and sold to the highest bidder at public auction, at the front door of the courthouse, where several persons were present and where $7,000 worth of land was sold at the same time, and at the request of Lake Moore, who was absent, the said C. T. Huddleston at said time bid said land off for Lake Moore for the sum of $1,000. The announcement then and there being made to the public that any party who desired to bid on the said land, before he paid any money, would be entitled to a quitclaim deed from Lake Moore, thereby clearing up the title."

Lake Moore, a witness on behalf of defendants, testified as follows:

"Q. Mr. Moore, at the time you took a quitclaim deed from Elnora Barnett and Polly Barnett and had a bid placed here in your name, was it, or was it not, to take title to yourself, or did you intend to take it and convey to Polly Barnett? A. It was the understanding between all of us that I was to convey to the negro woman. * * * Q. You did not pay Elnora Barnett anything for the deed? A. No, sir; my recollection is that Jim Barnett handled all of those matters. I got the deed from Polly Barnett, the quitclaim, and the agreement was when the land sold for $1,000 she wanted the tract, and the land was to go to her, and afterwards a man raised the bid to $2,000, and Jim Barnett agreed that if they got it raised to $2,000 to let it go, and somebody else bid that for it. Q. You say it was the purpose for taking these deeds from Polly Barnett and Elnora Barnett to convey it back to Polly Barnett? A. Yes, sir; as I remember it, it was this: Just to tell the whole thing as I understood it, it was not known whether Elnora Barnett was of age; it was in dispute, and they wanted to get the land for $1,000. She already had some kind of

probate proceedings, and the idea was to put in a good bid and buy at that price for her. After the bid was raised to considerable more than that, Jim Barnett agreed that if he could get $2,000 he would let it go, and they were going to make a quitclaim deed to whoever bought it, and my recollection is Mr. Huddleston bought it. Q. Do you mean, when you say it was understood when you took these quitclaim deeds from Polly Barnett and Elnora Barnett, that you were to convey it back to them? A. Yes, sir. Q. Your purpose in doing that was to get the title to the Elnora Barnett land clear and in good shape, wasn't it? A. Yes, sir; now do not misunderstand me that I was bidding on it philanthropically. I was wanting two tracts. Jim was helping me, and I was helping Jim. The land went so high I got an opportunity to draw out."

On December 20, 1912, Scottie Herriford executed her deed of conveyance reciting a consideration of $1,280, to C. H. Dixon, describing 40 acres of the land involved; on January 22, 1913, she executed a second deed for the recited consideration of $1,280 to said C. H. Dixon, describing another 40 acres of said land; and on February 1, 1913, she executed a third conveyance reciting a consideration of $1,320 to Porter Grimes, describing an additional 40 acres of said land. On February 8, 1913, T. M. Haynes executed a quitclaim deed to C. H. Dixon describing one of the tracts embraced in the former deed of Scottie Herriford.

It is alleged in the petition that the deed from the plaintiff to Lake Moore was fraudulently obtained and without consideration. In our opinion the evidence sustains this allegation.

Defendants in error assert as the origin of their title: (1) The guardian's deed of date of September 21, 1912, to Huddleston; (2) guardian's deeds of December 2, 1911, to Polly Barnett and D. J. Turner; and (3) the deed from the plaintiff to Lake Moore.

With regard to the claim of title under the purported guardian's deed to Huddleston, it may be said that plaintiff reached her majority on January 16, 1912; that thereafter the county court of Okfuskee county was without jurisdiction to authorize or confirm the sale of her lands in the guardianship proceedings, and therefore such proceedings and the deed to Huddleston pursuant thereto were void, and ineffectual to convey title.

As against plaintiff, the defendants all rely upon the proceedings in the county court, of which they had notice, the records of the office of the register of deeds, and the enrollment records of the Commissioner to the Five Civilized Tribes. From these sources it was apparent upon the most casual investigation: (1) That, as shown by the record

made conclusive evidence of her age by congressional enactment, plaintiff was an adult when the proceedings in the county court looking to the second sale of her allotment, and in which defendant Huddleston participated as attorney for her guardian, and also as purchaser at the guardian's sale, were begun. (2) That 120 acres of this same allotment had been sold for the sum of $3,440 in a former guardianship proceeding some months previous. (3) That Lake Moore, to whom plaintiff had executed a deed describing her entire allotment of 160 acres on May 6, 1912, and which deed appeared of record at the time of the pretended second sale of such land in the guardianship proceedings did not regard such deed as operative to convey title to the same, inasmuch as the return of sale disclosed that said land was sold to him at the second guardian's sale upon his bid in the sum of $1,000, and that thereafter upon confirmation of the sale to Huddleston he executed a quitclaim deed to Huddleston describing said land, for the recited consideration of $1. (4) That from his purchase of the land upon an increased bid at the time of the confirmation of the sale, obviously Huddleston did not regard the deed of the plaintiff to Lake Moore as a conveyance of her title. (5) That the court and no one connected with the matter considered the original guardian's sales to Polly Barnett and Turner as valid, in the light of the attempted resale in the guardianship proceedings.

These are some of the circumstances which would irresistibly have led an ordinarily prudent person to further inquiry, which would have disclosed the uncontroverted fact that no consideration was ever paid by the grantee in any deed in chain of title relied upon by defendants, save that executed to Huddleston by a person whose authority as guardian had ceased, and made pursuant to an order of a court without jurisdiction; that it was never contemplated that the deed executed by plaintiff should operate as a conveyance of her land; that the entire transaction was but a scheme to exploit the estate of plaintiff by denuding her of her land, to the profit of others.

From the foregoing it is clear that defendants had notice of circumstances sufficient in themselves to excite attention, and put a reasonably prudent person upon inquiry as to the particular facts establishing the fraud with which the entire transaction, culminating in the deeds to Huddleston, was tainted. Having failed to exercise ordinary diligence in the pursuit of such inquiry, defendants are chargeable with the actual knowledge they should otherwise have received. They were not purchasers in good faith and without notice.

By section 2926, Revised Laws 1910, it is provided:

"Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself."

In Cooper v. Flesner, 24 Okla. 47, 103 Pac. 1016, 23 L. R. A. (N. S.) 1180, 20 Ann. Cas. 29, it is held:

1. "The words 'actual notice' do not always mean in law what in metaphysical strictness they import. They more often mean knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts. One who purchases land with knowledge of such facts as would put a prudent man upon inquiry, which, if prosecuted with ordinary diligence, would lead to actual notice of rights claimed adversely to his vendor, is guilty of bad faith if he neglects to make such inquiry, and is chargeable with the 'actual notice' he would have received."

In Wood v. Carpenter, 101 U. S. 141, 25 L. Ed. 809, it is stated:

2. "'Whatever is notice enough to excite attention and put the party on his guard and call for inquiry is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it.' Kennedy v. Green, 3 Myl. & K. 722. 'The presumption is that if the party affected by any fraudulent transaction or management might, with ordinary care and attention, have seasonably detected it, he seasonably had actual knowledge of it.'"

The trial court found:

"That the said plaintiff, Elnora Barnett, after she arrived at her majority, accepted and used part of the proceeds of the funds of the sale of said land, and that she had knowledge at the time that said money was used by her that it was a part of the proceeds of said sale of said land. Therefore she is estopped from setting up the invalidity of said deed."

If the fact as found could operate as an estoppel (and this question it is unnecessary to determine), the evidence, in our opinion, does not sustain the finding; such evidence being, in substance, that Morris Barnett, who purported to act as guardian, received $2,000 from Huddleston as the purchase price of the land in question, and of this amount he loaned $1,000 upon real estate security to the father of the plaintiff, and this without the knowledge or consent of the plaintiff, and that the report of Morris

Barnett as guardian disclosed that from September 21, 1912, until October 11, 1913, he paid out for the maintenance and education of the plaintiff a sum slightly in excess of $200, leaving a balance due him from plaintiff in the sum of $86.63.

Evidence of the value of the land involved was offered, and there appears a diversity of opinion among the witnesses in this regard. The contention of defendant that $2,000 was approximately the full value of the land, if material in any respect, does not impress us favorably in the light of the fact that Huddleston sold the same to Haynes and Scottie Herriford three days before he obtained the guardian's deed, at a profit of $1,000, and that Scottie Herriford, in less than five months, had sold 120 acres thereof for the sum of $3,880.

It is unnecessary to consider the questions of misrepresentation and fraud presented by the cross-petitions of Dixon and Grimes against the defendants Haynes and Herriford. The rights of these parties may be determined upon subsequent proceedings.

It follows that the judgment of the trial court should be reversed, with directions to enter judgment in favor of the plaintiff below, canceling all of the deeds mentioned in her petition and quieting in her the title to the land involved.

By the Court: It is so ordered.