**WHAYNE v. SEAMANS et al.**

No. 12679—Opinion Filed June 26, 1923.

(Syllabus.)

**1. Vendor and Purchaser—Bona Fide Purchaser—Burden of Proof.**

To constitute a bona fide purchaser three things must exist: a purchaser in good faith, for value, and without notice; and where a subsequent purchaser interposes the defense of bona fide purchaser, the burden of proof is upon him.

**2. Same — Notice — Records — Duty of Inquiry.**

A purchaser of lands, who buys in reliance upon the record title, is chargeable with all the notice brought to him by the records, and if the record contains matters that would put a person of ordinary prudence upon inquiry into the nature of the title of the grantor, or the rights and equities of a former owner, then the law charges such purchaser with all the knowledge an inquiry upon his part, prosecuted with reasonable diligence, would have brought home to him.

**3. Notice—Facts Putting Upon Inquiry.**

Whatever is notice enough to excite attention and put a reasonably prudent person on his guard and calls for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant with it.

**4. Vendor and Purchaser — Title — Duty of Inquiry by Vendee.**

The general rule is, where a vendor presents conveyances to himself prima facie valid, and assures the purchaser that his title thereunder is perfect, no duty to investigate farther is imposed upon the buyer in the absence of other facts and circumstances suggesting investigation.

**5. Oil and Gas — Departmental Leases — Cancellation for Nonpayment of Rental.**

The various acts of Congress delegate to the Department of the Interior jurisdiction over departmental oil and gas leases, and said leases authorize the Secretary of the Interior to cancel said lease for failure to pay rentals when due. Held, the order of said secretary canceling said lease for the failure to pay rentals is conclusive in the absence of fraud.

**6. Same — Right to Rely on Department Records.**

A purchaser of an oil and gas lease may rely upon the records of the Secretary of Interior, which disclose that a prior lease had been canceled by said department for failure to pay the rentals and royalties due under said prior lease.

**7. Same.**

Plaintiff contends that Seamans, the lessee, in a departmental oil and gas lease, held a one-fourth interest in said lease in trust for said plaintiff. Seamans sold a portion of said lease on January 25, 1920, to defendant oil company. Plaintiff brought suit for his one-fourth interest. Defendant company pleaded it was a bona fide purchaser for value and without notice, and relied upon the record title, which disclosed that in 1913 the guardian of a full-blood Choctaw Indian executed a lease to Myers, which was approved by the Secretary of the Interior; Myers assigned to Whayne, Seamans, Brazell, and Berry. In 1917, Brazell executed a release of his interest in said lease, and filed the same for record. The record disclosed that on July 1, 1919, a subsequent guardian sold an oil and gas lease on said land at public auction, through the county court, to R. E. Seamans, the highest bidder, for $10,800. Said sale was confirmed by the county court,

and approved by the Secretary of Interior. The purchaser made inquiry of the Department of the Interior regarding the prior lease and ascertained that the prior lease had been canceled by said department June 20, 1919, for failure to pay rentals due December 30, 1918. Held, first, said party had a right to rely upon the record of the Department of Interior regarding the cancellation of a prior lease; held, further, an examination of the records of the county where the land is situated, and of the Department of the Interior disclosed the second lessee's title was prima facie valid, and there was nothing in said record to excite a reasonably prudent man to require him to make further investigation.

**8. Same—Findings—Evidence.**

Record examined, and held, the finding of the trial court that the defendant company was an innocent purchaser in good faith, for valuable consideration, and without notice, is not clearly against the weight of the evidence.

**9. Same — Assignment of Departmental Lease—Bona Fide Holder.**

The assignment of a departmental oil and gas lease in the following form: "The lessee hereby bargains, grants, sells, transfers, assigns and conveys all the right, title and interest of the lessee in and to said lease subject to the approval of the Secretary of the Interior, held, sufficient to make the assignee a bona fide holder, and said assignee took said lease free from any private agreement or secret trust of which he had no knowledge.

**10. Conversion — Property Subject—Leaseholds.**

The general rule is that only tangible property is subject to conversion, and a leasehold estate is not a subject for action in conversion.

**11. Same—Oil and Gas Leasehold—Damages.**

Record examined, and held, that the judgment in favor of Whayne and against Seamans for $150,000 cannot be supported upon any theory of the case.

Error from District Court, Carter County; Thomas W. Champion, Judge.

Action by John R. Whayne against R. E. Seamans and others for interest in oil and gas lease. Judgment for plaintiff against defendant Seamans, and both parties bring error. Affirmed in part and reversed and remanded in part.

Bass & Hardy, Abernathy & Howell, and Rainey & Flynn, for plaintiff in error.

Jean P. Day and Eben L. Taylor, for R. E. Seamans.

Geo. S. Ramsey and John M. Chick, for Southwestern Petroleum Company.

W. P. Z. German, for Skelly Oil Company.

Stuart, Sharp & Cruce and N. J. Gubser, for Homa-Okla Oil Company.

McNEILL, J. This is a suit in equity in the district court of Carter county by John R. Whayne against R. E. Seamans, Skelly Oil Company, Homa-Okla Oil Company, and Southwestern Petroleum Company to have his interest in and to a certain oil and gas lease in said county declared as onefourth, and for an accounting for the proceeds from oil and gas taken from said lease by the defendants. The lease was made to Seamans and covered 60 acres of land; thereafter Seamans assigned ten acres of said lease to the Homa-Okla Oil Company, 40 acres to the Skelly Oil Company, and ten acres to the Southwestern Petroleum Company. The three defendant oil companies pleaded they were innocent purchasers for value, and relied upon the record title regarding the ownership of said lease. The defendant Seamans denied generally the allegations of the petition. The trial court rendered judgment in favor of the plaintiff and against the defendant R. E. Seamans for $150,000 for conversion of property, and rendered against him. John R. Whayne appeals finding that they were innocent purchasers without notice and for value.

R. E. Seamans appealed from the judgment rendered against him. John R. Whayne appealed from the judgment rendered against him and in favor of the three oil companies. Since the appeal, stipulations have been filed, and the appeal dismissed in so far as it relates to the Skelly Oil Company and the Southwestern Petroleum Company. This leaves for consideration the appeal of Whayne denying him relief against the Homa-Okla Oil Company and the appeal of Seamans from a money judgment against him in favor of Whayne.

We will first consider the appeal of Whayne in so far as it relates to the Homa-Okla Oil Company. The material facts in considering this portion of the appeal may be stated about as follows:

Walton Carney, the owner of the fee, is a full-blood Choctaw Indian, the land being his allotment. On October 23, 1913, while Carney was a minor, J. E. LeBosquet, his guardian, executed a departmental oil and gas lease to E. M. Myers covering 212.83 acres of land, embracing the 60 acres in controversy and 152 acres situated some ten miles distance therefrom. but all located in Carter county. This lease was for a period

of ten years from the date of approval by the Secretary of the Interior, and as much longer as oil and gas was found in paying quantities. This lease was approved by the Secretary of Interior on December 30, 1913, and recorded in Carter county in 1914. The parties in their brief refer to this lease, dated October 23, 1913, as the LeBosquet lease, and thereafter when referring to same we will refer to it as the LeBosquet lease. In March, 1914, Myers executed an assignment of said lease to James H. Brazell, R. E. Seamans, H. L. Berry, and the plaintiff herein, for a consideration of $10,000 and reserved as a royalty one-fourth of the oil and gas. The 60 acres in controversy was in what was known as wildcat territory, but the 152 acres was in the north edge of the Healdton field, and was considered valuable.

Thereafter Brazell, Berry, Whayne, and Seamans organized the Elgin Oil & Gas Company and transferred the lease in so far as it related to the 152 acres to the Elgin Oil & Gas Company. Myers thereafter assigned his one-fourth royalty interest to W. G. Weimer. In 1914 and 1915, the Elgin Oil & Gas Company drilled a well upon the 152 acre tract of land. This well is referred to by some as a dry hole, and others as a spoiled well. The lease, however, was not operated nor the property developed. The lease, in so far as it related to the 60 acres in question, still remained the property of Brazell, Whayne, Seamans, and Berry. The lease, in so far as it relates to 152 acres, is not involved, and in referring hereafter to the LeBosquet lease, reference will be made to said lease covering the 60 acres. In 1917 Brazell executed a release to all his interest in the LeBosquet lease, and filed the same in the office of the county clerk of Carter county December 27, 1917. In the meantime, Walton Carney became 21 years of age, and in 1915, was declared an incompetent. H. R. Brown was appointed by the county court of Pittsburg county as his guardian. The annual rentals according to the terms of the lease were payable to the Superintendent of the Five Civilized Tribes at Muskogee. The rentals were paid up to December 30, 1918, when they became. delinquent. The lease provided that failure to pay the rentals due at any time would be a violation of one of the substantial terms of the lease. Section 9 of the lease provided that the Secretary of Interior might at any time, after 30 days' notice to the lessee, cancel the lease for a violation of any of the substantial terms thereof.

On April 4, 1919, Parker, the Superintendent of the Five Civilized Tribes, notified R.

E. Seamans that the rentals were past due. On April 7, 1919, Seamans was notified the lease would be canceled for failure to pay the rentals and royalties due on December 30, 1918. On June 14, 1919, Parker transmitted the lease to the Department of the Interior at Washington for cancellation for failure to pay rentals and advising the Secretary of Interior that the lands were becoming valuable for oil and gas purposes and requesting that the Secretary of Interior cancel the lease and notify him by telegraph to that effect. The Secretary of the Interior, on June 20, 1919, telegraphed the Superintendent at Muskogee that the lease had been canceled as to the 60 acres in question. The lease was canceled by reason of default in payment of rentals due December 30, 1918, and pursuant to the notice of April 7, 1919. The value of the lease on the 60 acres during all this time, or up to June 1, 1919, was from $1 to $3 per acre. The rentals due on the lease December 30, 1918, was $2 per acre. On June 1, 1919, a well was brought in about a mile and a quarter south of this 60 acres and the land became valuable for leasing for oil and gas.

On June 24, 1919, H. R. Brown, guardian of Walton Carney, filed his petition in the county court of Pittsburg county praying for authority to sell a lease on said land. An order was made authorizing the lease to be sold on June 1, 1919, at ten o'clock a. m., in the court room at McAlester at public auction to the highest bidder. Notice was given and posted; on July 1st, the court sold the lease in open court at public auction. There were several bidders, and R. E. Seamans being the highest bidder, the lease was sold to him for $10,800. The sale was confirmed by the court, and then filed with the Department for approval, and was duly approved October 30, 1919. The lease from time to time increased in value, and on January 24, 1920, R. E. Seamans assigned ten acres of the lease to the Homa-Okla Oil Company for $20,000.

For reversal, it is contended that by virtue of the assignment of the LeBosquet lease to Whayne, Brazell, Berry, and Seamans jointly, they became joint tenants or tenants in common, and each of these four assignees stood in a certain relation to one another of mutual trust and confidence, and neither would be permitted to act in hostility to the other in reference to the joint estates. and a title acquired by one would inure to the benefit of all. Whayne testified Seamans had orally agreed to pay the rental due on the LeBosquet lease and then bill him for his part of the rentals to wit, one-fourth.

It is contended by reason of Seamans' failing to pay the rentals according to his oral agreement and permitting the lease to be canceled, and purchasing a new lease for himself, said acts amounted to a fraud upon Whayne, and the new lease inured to his benefit.

It is conceded Whayne had notice along about September, 1919, that the LeBosquet lease had been canceled, but he states he did not know that Seamans had purchased the new lease. On February 11, 1920, which was after the Homa-Okla Oil Company purchased the assignment on ten acres, Whayne wrote a letter to J. B. Parker, Superintendent of the Five Civilized Tribes, informing him he claimed an interest in the lease made by Brown, as guardian, to Seamans. Let us admit for the sake of argument that the acts of Seamans amounted to a fraud upon Whayne and that a one-fourth interest of the lease held by Seamans inured to the benefit of Whayne. The record title, however, was in Seamans. The court found as a fact that the Homa-Okla Oil Company was a bona fide purchaser for value and without notice of the claim of Whayne. The question for consideration is, Is said finding clearly against the weight of the evidence? In this class of cases, after fraud of the grantor has been established, the burden of proof is upon the purchaser to prove it is a bona fide purchaser for value and without notice. In order to be a bona fide purchaser without notice, three things must exist: First, a purchaser in good faith; second, for value; and third, without notice. See Adams Oil & Gas Company v. Hudson, 55 Okla. 386, 155 Pac. 220.

It is undisputed that the defendants paid the sum of $20,000 for the assignment of ten acres of the lease, which was a fair and reasonable value for the ten acres at the time. The purchase money was paid on or about the 25th day of January, 1920, N. J. Gubser, attorney and vice president of the Homa-Okla Oil Company, examined the abstract and found the LeBosquet lease unreleased, made inquiry at the Muskogee office of the Five Civilized Tribes and found that the LeBosquet lease had been canceled by the Department of the Interior on June 20, 1919, for nonpayment of rentals, and was informed the new lease owned by Seamans was valid. There is no evidence that the company had any personal knowledge or information that Whayne was claiming any interest in and to the LeBosquet lease, or in and to the oil and gas lease in question.

The plaintiff in error contends that under the rule announced in the case of Daniel v. Tolon, 53 Okla. 677, 157 Pac. 756, to wit:

"A purchaser of lands, who buys in reliance upon the record title, is chargeable with all the notice brought to him by the records; and if the record contains matters that would put a person of ordinary prudence upon inquiry into the nature of the title of the grantor, or of the rights and equities of a former owner, then the law charges such purchaser with all the knowledge an inquiry upon his part, prosecuted with reasonable diligence, would have brought home to him"

—and in the case of Thomas v. Huddleston, 65 Okla. 177, 164 Pac. 106, the rule announced as follows:

"Whatever is notice enough to excite attention and put a reasonably prudent person on his guard and calls for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant with it"

—the facts were sufficient to amount to constructive notice, on the theory that the LeBosquet lease being of record and unreleased, and Seamans, one of the joint owners of the LeBosquet lease, had secured the subsequent lease in his own name, was sufficient to impute notice to the company that Seamans held the new lease for the benefit of the joint owners of the LeBosquet lease, and that Whayne claimed an interest in the lease, or at least was sufficient to place the company upon inquiry. It will not be disputed that the former lease being unreleased would impute to the company notice of the rights of the parties thereunder. It must be remembered this was a departmental lease; the department of the Interior reserves the right to cancel said leases for failure to pay the rentals. We then have approximately the following facts: In 1913, the guardian of this full-blood Indian had executed a departmental lease and by the terms the lease provided the department had power and authority to cancel the lease for failure to pay the rentals. The record disclosed that in July, 1919, the guardian of the minor had sold in open court another lease upon this same land. The same was approved by the county court and by the Department of the Interior. The party then inquired or investigated the records of the Department of the Interior and ascertained that prior to the time of the guardian selling the subsequent lease the Department of the Interior had canceled the prior lease for failure to pay rentals. The question then presented is, Could a purchaser rely upon the records of the Secretary of the Interior which disclosed that the prior lease had been canceled, or must he make further in-

quiry? We know of no case where this exact question has been before this court, but the Supreme Court of the United States, in discussing the rights of a purchaser who relied upon the records of the officers of the United States charged with the duty of determining certain facts and putting out titles as a result thereof in the case of United States v. Calif. and Oregon Land Co., 148 U. S. 31, 37 L. Ed. 354, stated as follows:

"When a statute of the United States delegates to a tribunal or officer full jurisdiction over a subject in which the United States are interested, his or its determination within the limit of his authority is conclusive, in the absence of fraud."

In the above case, the court quoted with approval from the case of United States v. Arredondo, 6 Pet. 691, 729, as follows:

"It is a universal principle that, where power or jurisdiction is delegated to any public officer or tribunal over a subject-matter, and its exercise is confided to his or their discretion, the acts so done are binding and valid as to the subject-matter; and individual rights will not be disturbed collaterally for anything done in the exercise of that discretion within the authority and power conferred."

In the case of United States v. Detroit Timber & Lumber Co., 131 Fed. 668, it was said:

"Where a vendor presents conveyances to himself prima facie valid, and assures the purchaser that his title under them is perfect, no duty to investigate farther is imposed upon the buyer in the absence of other facts and circumstances suggesting investigation."

In the body of the opinion it is stated:

"Where a person has not actual notice, he ought not to be treated as if he had notice, unless the circumstances are such as enable the court to say not only that he might have acquired, but also that he ought to have acquired, the notice with which it is sought to affect him; that he would have acquired it for for his gross negligence in the conduct of the business in question."

For other cases supporting this same principle see: United States v. Detroit Timber & Lumber Co., 200 U. S. 321, 50 L. Ed. 499; Barnard v. Akers, 79 Okla. 313, 193 Pac. 738; Lee v. Johnson, 116 U. S. 48, 29 L. Ed. 570; United States v. Iron Silver Mining Co., 128 U. S. 673, 32 L. Ed. 571; Colorado Coal & Iron Co. v. United States, 123 U. S. 307, 31 L. Ed. 182; United States v. Maxwell Land Grant Co., 121 U. S. 325, 30 L. Ed. 949; Alexander v. Pendle, 8 Cranch, 462, 3 L. Ed. 625; Townsend v. Little, 109 U. S. 504, 27 L. Ed. 1012.

The parties concede that the LeBosquet lease and also the subsequent lease were invalid until approved by the Secretary of the Interior. If we apply the law above announced to the facts in this case, to wit: R. E. Seamans presented a lease to defendant company approved by the county court and the Secretary of the Interior, executed to himself and prima facie valid, and the records of the Department of the Interior disclosed that the prior LeBosquet lease had been canceled—we think, under these circumstances, it could not be said that ordinary prudence would require a person to make further investigation unless there were some other facts and circumstances that would suggest further investigation. It is argued that because the parties were joint owners of the prior lease, and the new lease was in the name of only one of the parties, this would be a circumstance that would require further investigation; but we think in a case where the new lease is sold by a guardian, in open court to the highest bidder, and requires the approval of the Secretary of the Interior, and under the rules the lessee must make an affidavit that no other person has any interest in said lease, that ought to be sufficient investigation for a person using ordinary care and prudence. The record disclosed no other facts or circumstances that would require further investigation, and the company had no notice prior to the time of paying the full consideration. The company, therefore, brings itself squarely within the rule announced in the case of Adams Oil & Gas Co. v. Hudson, supra.

It is further contended that the assignment in the instant case granted and conveyed to the Homa-Okla Oil Company the right, title, and interest owned by Seamans and nothing more, and the company only took title to such an estate as the assignor has and no more. The assignment in the instant case is one prepared by the Department of the Interior, and provides as follows:

"Hereby bargain, sell, transfer, and assign and convey all the right, title and interest of the lessee in and to said lease in so far as it covers (described land) subject to the approval of the Secretary of Interior."

The plaintiff in error contends that, by reason of the trust relation existing between Whayne and Seamans, Seamans only owed a three-fourths interest in the lease, and a one-fourth interest belonged to Whayne, and that the purchaser only acquired under and by virtue of the assignment the interest be-

longing to Seamans, and Whayne's interest remained intact.

In support of this proposition, the plaintiff cites the case of Moore v. White, 75 Okla. 171, 182 Pac. 684:

"An assignment in writing of all our right, title, and interest in and to a certain leasehold for oil and gas mining purposes does not amount to a warranty of title. Under such an assignment, the assignees merely take whatever interest the assignors have in the leasehold, and in the absence of fraud assume the hazards arising out of the failure of title."

In that case the party had given a note for the purchase of an assignment of an oil and gas lease, and it later developed that the title was defective, and suit was brought upon the note, and the defendant defended for failure of consideration. This court held that the lessee did not guarantee or warrant the title of the grantor by the assignment, as the record disclosed what interest the grantor had, and the assignment did not guarantee the grantor's title.

Plaintiff also relied upon the case of Hanrick v. Patrick, 119 U. S. 156, 30 L. Ed. 396. This case, however, simply held that a conveyance similar to the one in question does not warrant the title and estop a person from claiming an estate acquired in the premises thereafter by operation of law. Under the rules and regulations of the Department of the Interior, the lessee is required to make an affidavit that no one has any interest in the premises except the lessee, and where the Department of the Interior requires such an affidavit, and the lessee thereafter assigns his interest, which is approved by the Department of the Interior, the assignment is good, and is sufficient to protect a purchaser for value and without notice as against persons claiming some secret interest therein.

As was said in the case of Alexander v. Pendleton, 8 Cranch, 462, 3 L. Ed. 624:

"He was not bound to know that a private parol agreement existed which would control the possession. This trust, therefore, no more passed with the land to Hartshorne than would any other secret trust of which he had no knowledge."

In the case of Moelle v. Sherwood, 148 U. S. 21, 37 L. Ed. 353, the court in the third paragraph of the syllabus stated as follows:

"The receipt of a quitclaim deed does not of itself prevent a party from becoming a bona fide holder, and the doctrine expressed in many cases that the grantee in such a deed cannot be treated as a bona fide purchaser does not rest upon any sound principle."

In the case of United States v. California & Oregon Land Co., 148 U. S. 31, 37 L. Ed. 361, in the seventh paragraph of the syllabus, it was said:

"A deed by which the grantor aliens, releases, grants, bargains, sells and conveys the granted estate to the grantee, his heirs and assigns, to have and to hold the same and all the right, title and interest of the grantor therein, is a deed of bargain and sale, and will convey an after-acquired title."

See Tucker v. Leonard, 76 Okla. 16, 183 Pac. 915.

We therefore conclude, under the facts in this case, even if we assume that the facts were sufficient to create a trust in the lease in favor of Whayne, the assignment was sufficient to protect a purchaser against secret trusts or interests which the purchaser had no knowledge of.

In regard to the appeal of R. E. Seamans, the trial court found, in substance, there was no fiduciary relation or tenancy in common existing between the plaintiff and defendant Seamans, and the evidence does not preponderate sufficiently, nor is it sufficiently overwhelming, to impress a trust, but the court does find the evidence is sufficient to show a fraudulent conveyance of plaintiff's property by defendant Seamans and by reason thereof finds Seamans is indebted to plaintiff in the reasonable value of an undivided one-fourth interest in the lease at the time Seamans converted it to his own use and benefit, or at the time of this judgment. The court found the value of the property of Whayne so converted was $150,000. The defendant Seamans contended that even if Whayne had a joint interest with Seamans in the LeBosquet lease, the same was not susceptible of conversion, and a judgment of the court for damages for conversion was unauthorized, and was not within the issues made therein by the pleadings or the evidence. In support of this contention, Seamans contends that only tangible property is subject to conversion, citing 38 Cyc. 211; Goldschmidt v. Maier (Cal.) 73 Pac. 984; Lun v. Mahaffey (Ore.) 185 Pac. 746. Attorneys for Whayne do not brief this question. We think the contention of Seamans that a leasehold estate is not the subject for an action of conversion is will taken. The evidence is undisputed that Seamans sold the whole lease for $170,000. The facts also disclose he paid a certain commission for selling this lease, or at least a portion of the same. If we assume that Whayne had a one-fourth interest therein, he would only be entitled to an accounting for one-fourth of the amount

received, less one-fourth of the expenses therein. A judgment for $150,000 for conversion cannot be sustained upon any theory.

It is, therefore, the judgment of this court that the judgment of the trial court finding that the Homa-Okla Oil Company was a purchaser in good faith for value and without notice is not clearly against the weight of the evidence, and that portion of the judgment is affirmed. The judgment against Seamans for $150,000 is reversed and remanded, with instructions to the trial court to grant the defendant Seamans a new trial.

JOHNSON, C. J., and NICHOLSON, COCHRAN, and MASON, JJ., concur.