**Albert G. DUNAWAY and Irma M. Dunaway, husband and wife, Appellants,**

**v.**

**Ivan LEWIS, Appellee.**

**No. 48393.**

Court of Appeals of Oklahoma.

Division No. 1.

April 6, 1976.

Rehearing Denied May 18, 1976.

Certiorari Denied July 19, 1976.

Released for Publication by Order of Court of Appeals July 22, 1976.

Summerlin, Williams & Zacharias, by Thomas H. Williams, Claremore, for appellants.

Poplin & Blevins, by David R. Poplin, Pryor, for appellee.

REYNOLDS, Presiding Judge.

In four separate transactions that occurred in 1971 and 1972, Albert G. Dunaway and his wife, Irma M. Dunaway, plaintiffs and appellants, purchased four

residential lots on contracts for deeds in Lakeside North Second Subdivision, in Mayes County, Oklahoma. The lots were purchased from Ivan N. Lewis, a developer, and his wife Eugenia M. Lewis, the defendants in this cause, for a total price of $10,000.00. Two of the lots were adjoining and were on the Lake Hudson waterfront. The other two were also adjoining and were located directly across the road from the waterfront property. The Lakeside Second Subdivision consisted of approximately twelve lots, and was restricted to single family, permanent residential structures of a minimum of 800 square feet.

Subsequent to the purchase, the Dunaways spent approximately $7,778.69 to improve the waterfront lots by clearing, filling with dirt purchased or excavated from their lots across the road, building a boat dock and beginning construction of a basement for a home.

In April of 1973 Lake Hudson flooded the Dunaways' partially constructed basement. The water covered three-fourths of the lakeside lots and a portion of the access roads into the subdivision. By November of 1974 the area had flooded two more times. On investigation, the Dunaways learned that the Grand River Dam Authority (hereinafter referred to as GRDA) owned a perpetual flowage easement over the subdivision and in addition, had the right to remove any material or artificial obstruction or structures which interfere with the right of flowage.

On June 14, 1973 the Dunaways brought this action against Ivan and Eugenia Lewis alleging that the property had been sold in violation of the Federal. Interstate Land Sales Full Disclosure Act, 15 U.S.C., § 1701 et seq. because the defendant had not furnished a written property report to the plaintiff before the sale and had not obtained an exemption from the Secretary of Housing and Urban Development. The plaintiffs pleaded in the alternative that the defendants had fraudulently misrepresented that the lots were suitable for residential construction. The defendant, Eugenia Lewis, was dismissed from the litiga-

tion when the only issue involving her was resolved by stipulation of the parties.

A full hearing on the merits was had before a jury on March 10, 1975. Evidence introduced by the parties revealed that Lakeside Second was located in the same quarter section and across an arm of Lake Hudson from Lakeside Subdivision; that Lakeside Subdivision was platted approximately ten months before Lakeside North Subdivision and contained in excess of 100 lots. Lakeside North Second was advertised by a sign approximately four feet square, located at the entrance to Lakeside North Second. Lakeside North was advertised once or twice in the Pryor Daily Times, which has some interstate circulation. The plaintiffs learned of Lakeside North Second from a friend who owned property in the development. The contracts for the sale of land in the two tracts are identical and the restrictions are similar. Some of the purchasers mailed their payments to the defendant.

A verdict for the defendant was returned on both causes of action. The plaintiffs appealed asserting that the trial court erred in that it failed to enter a directed verdict or make a ruling that Lakeside North Second was a "subdivision" within the meaning of the Interstate Land Sales Full Disclosure Act.

The federal statute requires that any developer who makes use of interstate communication or transportation or the mails to sell or lease any lot in a subdivision must file a statement of record and furnish the purchaser with a printed property report before a sales contract or agreement is signed. Because the act governs only "subdivisions" it is first necessary to determine whether the lots the plaintiffs purchased were part of a subdivision as defined by the act. Subdivision is defined in § 1701(3):

" 'Subdivision' means any land which is divided or proposed to be divided into fifty or more lots, whether contiguous or not, for the purpose of sale or lease as part of a common promotional plan and where subdivided land is offered for sale

or lease by a single developer, or a group of developers acting in concert, and such land is contiguous or is known, designated, or advertised as a common unit or by a common name such land shall be presumed, without regard to the number of lots covered by each individual offering, as being offered for sale or lease as part of a common promotional plan; . . . ."

Because Lakeside North Second contains only twelve lots, for it to be classified as a subdivision, it must be proved that it was offered for sale or lease as part of a common promotional plan with Lakeside North. The statute creates a presumption that it was so offered if it was contiguous or is known, designated or advertised as a common unit or by a common name.

"A presumption [is] a rule of law, created by statute, or judicial decision, in which a finding of the basic fact of the presumption gives rise to the existence of the presumed fact until the presumption is rebutted and becomes inoperative." L. Whinery, Manual of Evidence, Chapter IV, Part A, § 1. Also see Maguire, Weinstein, Chadbourn and Mansfield, Cases and Materials on Evidence, 698 (5th ed. 1965).

Professor Whinery further states in Chapter IV, Part D, § 1:

"In civil cases the rule that the presumption shifts the burden of producing evidence to the adversary is a preferred view, and also appears to be the rule generally followed in Oklahoma" Citing *Stumpf v. Montgomery*, 101 Okl. 257, 226 P. 65 (1924).

■ When a presumption is involved the burden of persuasion shifts. It is then the responsibility of the fact finder to determine whether the presumption has been overcome with the persuasiveness of the evidence.

■ In the case at bar the defendant produced evidence that Lakeside North Second was not a part of the same promotional plan as Lakeside North. Although his evidence that the developments were not contiguous and were created at different times are not necessarily persuasive, the disparate forms of advertising used by the defendant create a valid question of fact whether Lakeside North Second was or was not a part of a common promotional plan with Lakeside North. That fact was properly reserved for the jury.

■ The plaintiffs also assert that the trial court erred in instructing the jury on their second cause of action in fraud. The instruction that was objected to is as follows:

"You are instructed that if a prospective purchaser of real property receives such information about the property as would cause a reasonably prudent person to further inquire about adverse interests, and if such further inquiries would have led to the discovery of a prior adverse interest in the property, you are permitted to infer that the prospective purchaser actually knew the facts such further inquiry would have revealed."

The plaintiffs assert that the defendant fraudulently represented that the property was suitable for residential purposes when in fact it was not, because GRDA has the right to remove any material or artificial obstructions and structures on the property. They assert that the instruction would be acceptable if they could have ascertained upon inspection of the property that GRDA had the right to remove their improvements. The plaintiffs have overlooked one salient fact. That is, by the terms of the easement in the deed from GRDA to the defendant, GRDA reserved the right to remove "structures which interfere with the right of flowage." Therefore, interference with flowage is a condition precedent to removal of improvements. The defendants had actual as well as constructive notice that a flowage easement existed and of the possibility that a portion of their land could be flooded. The defendant testified that he told the plaintiffs that there was a flowage easement over the entire area. The plaintiffs denied that they had been given this information, asserting that the defendant told them that

there was plenty of room to build a house on the property. The instruction stated ". . . if a prospective purchaser of real property receives such information about the property as would cause a reasonably prudent person to further inquire about adverse interest. . . ." This properly left the question to the jury as to whether the defendant actually informed the plaintiffs of the extent of the easement. Because the further right of GRDA to remove improvements depended in the first instance on interference with flowage the notice of one necessarily involves knowledge of the other.

The Supreme Court stated in *Thomas v. Huddleston*, 65 Okl. 177, 164 P. 106, 109 (1916),

"Whatever is notice enough to excite attention and put the party on his guard and call for inquiry is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant with it."

AFFIRMED.

BOX, and ROMANG, JJ., concur.