## BAKER COTTON OIL CO. et al. v. FIRST NAT. BANK.

No. 14305—Opinion Filed Dec. 18, 1923.

Rehearing Denied Feb. 19, 1924.

(Syllabus.)

1. Appeal and Error—Questions of Fact—Findings—Replevin.

In an action in replevin tried to the court, the finding of the trial court that plaintiff is entitled to immediate possession of the property will not be disturbed where there is any evidence reasonably tending to support said finding.

2. Same—Sufficiency of Evidence.

Record examined, and held, the finding of the trial court that the lien of the bank was superior to that of the landlord is supported by sufficient evidence.

Error from District Court, Jackson County; Geo. S. March, Assigned Judge.

Action by the First National Bank of Altus against the Baker Cotton Oil Company, John T. Hays intervening. Judgment for plaintiff, and defendant and intervener bring error. Affirmed.

T. M. Robinson, John T. Hays, and Howell E. Hays, for plaintiffs in error.

S. B. Garrett, for defendant in error.

McNEILL, J. The First National Bank of Altus commenced this action in the district court of Jackson county against the Baker Cotton Oil Company to recover possession of eight bales of cotton on which it is alleged the bank held a first mortgage.

The defendant Baker Cotton Oil Company denied generally the allegations of plaintiff's petition, and alleged it had purchased the cotton from John T. Hays, who represented that he was the owner of the same and had authority to sell the same, and asked that Hays be made a party to said suit if it be adjudged that he had no authority to sell the same, and the cotton company have judgment against Hays for the amount paid Hays for said cotton. Hays intervened in said action and filed an answer and cross-petition, stating he was the owner of certain lands in Jackson county and leased the same to L. McYeary and B. M. McYeary, and attached a copy of the lease contract to his answer. Said contract provided Hays was to receive one-fourth of the cotton, one-third of the wheat, and further provided that McYeary should plant 50 acres to feed stuff and should pay $4 per acre for said 50 acres to be evidenced by a promissory note for $200 due November 15, 1921, and secured by a chattel mortgage. At the same time a note was executed by McYeary in the sum of $200 and secured by chattel mortage upon all the feed stuff grown upon the premises. Hays claimed a landlord's lien upon the cotton in question for the rent due upon the land not planted to cotton and wheat, and contends that his statutory lien is prior to that of the bank, and further pleaded that he had paid for picking the cotton. He also asks damages against the bank for protesting a check, and asks damages for appropriating a part of the crop raised on the premises; also a certain amount still due for wheat sold and not properly accounted for: one-fourth of the rent due on cotton sold by the bank and not included in the replevin action. $1,800 for failure to cultivate said lands, and judgment in the aggregate of $3,892.11.

A demurrer was filed to this answer and cross-petition, which was sustained by the court, and the court ordered the cross-petition against the bank docketed as a separate cause of action. The plaintiff filed a reply; denied Hays' lien on the cotton was superior to its mortgage.

With the issues thus framed the case was tried to the court without a jury. Upon the trial, the court found the issues in favor of the plaintiff bank and against the defendant Baker Cotton Company, and found Hays had waived his landlord's lien, and the bank had the first lien, and was entitled to possession of five bales of cotton or the value thereof, and fixed the value of each bale. The court declined to adjudicate the rights between Hays and the cotton oil company, but continued that part of the case for further hearing.

The plaintiffs in error have filed two briefs. In the original brief it is contended there is only one issue involved in this case and that is the right of plaintiff to immediate possession of the property, and unless the plaintiff is entitled to possession, the holding of the trial court is erroneous. In a supplemental brief, the plaintiffs in error briefed numerous other propositions: That the court erred in sustaining the demurrer to the cross-petition or counterclaim of John T. Hays, and the court erred in the assessment of the amount of recovery, and, further, that the court erred in holding that the lien of the plaintiff was superior to the lien of the landlord, and holding that the landlord's lien had been extinguished prior to the institution of this suit.

We will first consider the question of the trial court in sustaining the demurrer to the petition by Hays upon the theory that the same was not a proper cross-petition and counterclaim and ordering the same docketed as a separate suit. We think there was no error in the ruling of the court on this question. It was a matter largely within the discretion of the court. The cross-petition of Hays raises many new issues not involved in the main suit. Whether it would have been reversible error to try those issues in this case, it is unnecessary to determine. The cross-petition was an action for damages against the bank on several issues disconnected with the case at bar, and was not a counterclaim or set-off as defined by the statute, and especially in an action where only the right of possession of property is involved.

Upon the question of whether Hays had waived his landlord's lien, and whether the mortgage of the bank was superior to that of Hays, that was a finding based upon the facts, and on appeal involves the question whether there is any evidence reasonably tending to support said finding.

It is admitted that Hays was the owner of the land and that McYeary entered into

a contract to rent the same. It appears that McYeary had been in possession of the land prior thereto, and that the vice president of the plaintiff bank had been acting as Hays' agent. McYeary had already mortgaged the crop to the bank before making the lease with Hays. We think this was immaterial. The rent contract was prepared by McYeary and the vice president of the bank, and the notes and the chattel mortgage for the rent of the land to be planted to feed stuff were executed by McYeary in favor of Hays and sent by the vice president of the bank to Hays, who signed the rent contract and kept the notes and chattel mortgage. McYeary, it appears, was unable to properly farm the land, and so advised Mr. Hays, by a letter dated July 6th, and being unable to work the land, desired to be released. Hays immediately wrote to the bank setting out McYeary's letter to him, and then wrote as follows:

"This letter indicates to my mind that a fairly good crop is on the farm and in bad need of work, with Mr. McYeary unable to work himself and with only a small plow boy to finish the crop of more than 200 acres. You are on the ground and interested as much or more than I am and I hope you can suggest and find a way by which the crop can be protected. I am unable at present to find a man to move on the farm and take charge of the crop. I am making inquiry and should I find a suitable person I shall call you. I agree with McYeary that immediate action is proper, should we undertake to finish the cultivation of the crop and harvesting of same. I am ready to do what we may think best to protect our interests. Advise me."

The evidence of what occurred after that time is conflicting. The bank contends that it paid for chopping the cotton and had the cotton cultivated; that thereafter Mr. Northington moved on to the place, having rented the same from Hays for the next year, and the bank made arrangements with Northington to pick the cotton and get other pickers, agreeing to pay so much for picking and hauling the cotton. The cotton was to be delivered at Humphrey. The bank contends that after the cotton was delivered at Humphrey, Hays, without any knowledge of the bank, took possession of the cotton and hauled it to Altus and sold it to the defendant company. Hays contends he employed Northington to gather the crop and paid for the picking. The record further disclosed that there were 11 bales of cotton gathered from the farm. The court, however, only adjudicated five bales of cotton.

This court in numerous decisions has held that the landlord, under our statute, has a lien for rent which extends to all the products produced. See Dorsett v. Walker, 59 Okla. 198, 158 Pac. 608; Wilmering v. Hinkel, 61 Okla. 82, 160 Pac. 60. The only question in this case is whether the landlord's taking a chattel mortgage upon the feed stuff to secure the rent for land planted to feed stuff, and his letter to the bank, wherein he advised the bank that it was interested in the cotton crop as much or more than he was, and suggested it find a way to protect the crop, and the other facts and circumstances are sufficient to support the finding of the court. The evidence disclosed the feed crops were practically worthless. The wheat was in the stack and the cotton was weedy and had not been attended to properly, and at the date of the letter of Hays to the bank needed attention.

We must look to the rights of these parties as we find them to be upon the 7th day of July. Mr. Hays was the owner of the land. He was interested in having the crop protected and cultivated, thereby increasing the amount of cotton he would receive as rent. He also had a note of $200 payable for rent due upon the land planted to feed stuff. The amount of this rent was secured by a mortgage and was also a lien upon the cotton. The bank had a mortgage upon the cotton. Mr. Hays then notified the bank, suggesting that it was on the ground and was more interested than he, and hoping that it could find a way to protect the cotton crop. He agreed that immediate action was proper, and that he himself was ready to do what was best to protect "our interests." The bank, acting upon this letter, proceeded to have the cotton chopped and cultivated. It cannot be said that the bank acted upon the theory that it desired to increase Hays' rental and to secure his statutory lien for rent not due upon the cotton, and his lien for failure to properly have the ground cultivated. We think, under all the facts and circumstances, the evidence is sufficient to support a finding that Hays desired the bank to look after the crop, he receiving his one-fourth interest and the bank's mortgage being upon the three-fourths owned by the tenant. The amount the bank expended in chopping, hauling, and picking the cotton necessarily would come out of the three-fourths. We think that the finding of the trial court that the statutory lien had been waived except as to the one-fourth of the cotton is supported by sufficient evidence.

The judgment of the trial court is affirmed in so far as the right of possession of the five bales of cotton is concerned, and the further fact that under the circumstances the lien of the landlord, as it relates to the tenant's portion of the crop, is

inferior to that of the mortgagee. While we think the court should have proceeded with an accounting between Mr. Hays and the bank, in so far as it related to all the cotton, the cost of picking must be charged to the tenant's share. These matters may be determined in the action now pending and undisposed of, and the finding of this court is to be considered affirming the right of the bank to the possession of the five bales of cotton and the question of the lien, holding that the mortgage is prior to the landlord's lien on the three-fourths of the cotton belonging to the tenant. It would serve no useful purpose to reverse the case and again try this issue, and the court in an accounting proceeding can settle the rights between Hays and the bank and the bank and the cotton company.

For the reasons stated, the judgment of the trial court is affirmed.

NICHOLSON. COCHRAN, BRANSON, and MASON, JJ., concur.