**FIRST NAT. BANK OF ALTUS v. HAYS.**

No. 17239.    Opinion Filed Jan. 3, 1928

(Syllabus.)

1. **Appeal and Error—Judgment in Accounting Sustained by Evidence Not Disturbed.**

In an action for an accounting, where the evidence reasonably sustains the judgment of the lower court, the same will not be disturbed on appeal.

2. **Account—Sale of Mortgaged Chattels Held Valid on Accounting Showing Mortgagee Indebted to Seller of Property.**

Although F., as mortgagee, may be entitled to possession of personal property as against B., if B. purchased said property from H., and at the time of the sale F. was indebted to H. in a sum in excess of the value of said personal property, on an accounting between the three parties, the sale from H. to B. will be held valid.

**3. Same—Judgment Sustained.**

Record examined, and evidence found sufficient to support the judgment of the lower court.

Commissioners' Opinion, Division No. 1.

Error from District Court, Jackson County; Frank Mathews, Judge.

Action for an accounting between John T. Hays and the First National Bank of Altus. Judgment for Hays in the sum of $108, and bank appeals. Affirmed.

S. B. Garrett, for plaintiff in error.

Geo. L. Zink, for defendant in error.

FOSTER, C. This action is based on a cause originally filed in the district court of Jackson county by First National Bank of Altus, Okla., against Baker Cotton Oil Company, to replevin eight bales of cotton grown by L. McYeary and B. M. McYeary in 1921, on a farm located in said county owned by John T. Hays.

The bank based its claim under a chattel mortgage given by McYeary. The Baker Cotton Oil Company answered that it purchased the said bales of cotton from John T. Hays, and asked that said John T. Hays be made a party. Hays filed an answer and cross-petition by way of intervention in said cause, in which he admitted the allegations of Baker Cotton Oil Company, and denied the allegations in the petition of the plaintiff, First National Bank; Hays claiming a landlord's lien, superior to the mortgage of the bank, for rent due on other land on which the McYearys were liable to Hays in cash, and in addition thereto by way of cross-petition alleged various claims against the bank amounting to a total of $3,892, which are set out in detail in said cross-petition.

The plaintiff bank filed a reply to the answer and cross-petition of the said John T. Hays consisting of a general denial, and a further allegation that one W. M. Ingram, who, as vice president of said bank, at all times acted as the agent of the said John T. Hays, and, with authority from him, paid out the sums of money alleged in the answer and cross-petition of Hays, and that the said Hays consented to all the acts of Ingram and that he (Ingram) made a final settlement with Hays in which he accepted payment in full of all sums due. To this reply the said John T. Hays filed a general denial.

A demurrer was filed by the bank to the answer and cross-petition of Hays, which was by the lower court sustained as not being a proper pleading in said cause, but was docketed for separate trial and given a separate number.

The court then proceeded to hear the replevin suit between the bank and the Baker Cotton Oil Company, which resulted in a verdict in favor of the bank for the possession of five of the eight bales of cotton sued for, from which judgment the Baker Cotton Oil Company appealed to this court, and said judgment was affirmed as to the priority of the lien of the bank under its mortgage over the landlord's lien of John T. Hays for rent on the other land on which no crops were grown, and held that the bank was entitled to possession of the five bales of cotton, said case being styled Baker Cotton Oil Co. v. First National Bank of Altus, reported in 101 Okla. 113, 223 Pac. 172, Justice McNeill, who rendered the opinion of the court, used the following language in the concluding paragraph of said cause:

"The judgment of the trial court is affirmed in so far as the right of possession of the five bales of cotton is concerned, and the further fact that under the circumstances the lien of the landlord, as it relates to the tenant's portion of the crop, is inferior to that of the mortgagee. While we think the court should have proceeded with an accounting between Mr. Hays and the bank, in so far as it related to all the cotton, the cost of picking must be charged to the tenant's share. These matters may be determined in the action now pending and undisposed of. and the finding of this court is to be considered affirming the right of the bank to the possession of the five bales of cotton and the question of the lien, holding that the mortgage is prior to the landlord's lien on the three-fourths of the cotton belonging to the tenant. It would serve no useful purpose to reverse the case and again try this issue, and the court in an accounting proceeding can settle the rights between Hays and the bank and the bank and the cotton company."

After the case was affirmed in this court, the matter of the accounting was set down for hearing in the district court of Jackson county, the First National Bank, John T. Hays and the Baker Cotton Oil Company being present in person and by attorneys The matter was tried before the court without a jury and resulted in a judgment in favor of John T. Hays against First National Bank, on his answer and cross-petition, in the sum of $108, and a further judgment holding that the Baker Cotton Oil Company by its purchase of the five bales of cotton from John T. Hays acquired a clear and valid title to the same, and that the Baker Cotton Oil Company had good title to said five bales of cotton at the time the replevin suit was commenced, and it is from this judgment that

the first National Bank of Altus now prosecutes this appeal.

The substance of the court's finding on this accounting is as follows:

(1) That the bank had converted the sum of $176.50 due to Hays for his part of the cotton crop grown by one Keys on said land in the year 1921.

(2) That the sum of $46.78 is due from the bank to Hays on account of the wheat crop grown by McYeary in the year 1921.

(3) That the sum of $39.11 was wrongfully paid by the bank, out of the money belonging to Hays, to Bonebrake-Hightower Company for expenses in securing cotton pickers to pick the cotton crop grown by McYeary.

(4) That the eight bales of cotton involved in the replevin suit above referred to was a part of the crop of cotton grown by McYeary which consisted of eleven bales, two of which were delivered to the plaintiff bank and nine to John T. Hays; and that after paying the expense of picking and cultivating the said crop, the said John T. Hays had received from the sale of the nine bales of cotton only the sum of $153.88, in excess of what he should have received as the landlord's share of said cotton for that year.

The bank in its motion for a new trial and petition in error sets up many assignments of error, but we believe its entire contentions and argument are confined to the following two propositions:

(1) That the judgment of the trial court is not supported by sufficient evidence.

(2) That the holding of the trial court, to the effect that the Baker Cotton Oil Company secured a good title to the five bales of cotton by its purchase from Hays, is in conflict with the holding of this court in Baker v. First National Bank, supra.

Concerning the first finding of the court, after an examination of the testimony, we find that during the year 1920 one Keys was a tenant on the farm belonging to Hays located in Jackson county; that under the contract between Keys and Hays, the latter was to receive one-fourth of the cotton crop after all expenses were paid. Keys was also indebted to the bank. The bank was allowed to receive the money from Keys from the sale of the cotton, and in determining the amount due to Hays the lower court found that the bank deducted all the expense from the total amount of cotton sold from the crop of Keys, and from this net amount gave Hays credit for one-fourth thereof, when as a matter of fact Hays should have received credit

for one-fourth of the sale price of the cotton. The expense should have been deducted from the other three-fourths going to Keys. This made a difference of $176.

The second finding is based on an insurance policy in the name of McYeary on his crop of cotton, which has a loss payable clause in favor of the bank, and the bank, without any authority from Hays, paid out from the money due Hays the sum of $46.78 as part of premium and other expense. It was contended by Hays that this was illegally paid out, but on the contrary the bank contended that, since the insurance covered the cotton crop, it was for the benefit of Hays as well as McYeary and the bank. However, the insurance policy does not mention the name of Hays and the court found that it did not cover his part of the cotton crop. We believe therefore, that, under all the testimony, the court was justified in charging the bank with said sum of $46.78.

The next item was $39.11, which was paid by the bank to Bonebrake-Hightower Company, out of the money belonging to Hays, for securing and paying the expenses of cotton pickers to pick the cotton grown by McYeary. It appears from the record that in June, 1922, McYeary notified Hays and the bank that he would be unable to further cultivate the cotton crop and that they would have to take it over. Either Hays or the bank secured a Mr. Northington to take over the farm, and the bank contends that the Bonebrake-Hightower Company also had a lien upon the cotton crop, and they they went to considerable expense in paying bonuses and expenses for cotton pickers, and that John Hays was liable for part of said expense and therefore paid out of his money the sum of $39.11. The court found, however, that this money was paid without any authority on behalf of Hays and that he was not liable for the expense in securing cotton pickers, and that the bank should therefore be charged with this amount.

The court found that the bank should be charged with the total sum of $262.39, which represented money they had either paid out without authority or retained in their bank belonging to Hays prior to the time that Hays sold the cotton to the Baker Cotton Oil Company.

Regarding the eleven bales of cotton grown on the farm by McYeary, as above indicated, one Northington was employed to pick said cotton, and it is not disputed that out of the eleven bales John Hays received nine, and that he sold said nine bales of cotton to the Baker Cotton Oil Company and received $842.50. It is further undisputed that the

First National Bank received the other two bales and sold the same for $144.

Under the decision of this court in the case of Baker Cotton Oil Company v. First National Bank, supra, it is specifically held that all of the expense should be charged to the tenant's part of the crop. The bank was only entitled, under its mortgage, to the tenant's part. John Hays contended, and the court found, that he paid out to Northington for picking and marketing the cotton the sum of $442. The total amount of the sale price of the eleven bales of cotton for said year was $986.50, and the part which Hays, the landlord, was entitled to receive as rent was one-fourth of said amount or $246.62. This, together with the amount the court found Hays paid to Northington, to wit, the sum of $442, would equal $688.62, the amount which John Hays was entitled to receive out of the cotton crop. He admits in his testimony that he actually received $842.50. This would leave a balance of $153.88 due from Hays to the bank on account of the cotton grown by McYeary, the bank under its mortgage being entitled to all the tenant's part.

Deducting this from the $262.39, which the court found was due from the bank to Hays, leaves a balance of $108.58 which the court in its judgment found to be still due and owing from the bank to Hays.

While the evidence is somewhat conflicting on all of these items, we believe there is ample testimony in the record to justify the court's findings, and the judgment of the trial court will therefore not be disturbed.

It is next contended, however, that the court found contrary to the decision of the Baker Cotton Oil Company v. First National Bank, supra, that the title to the five bales of cotton passed to the Baker Cotton Oil Company at the time Hays sold the same to it, while in the case above referred to it was specifically held by this court that the First National Bank was entitled to the possession of the said five bales. We do not believe there is any merit to this contention. It is true this court found in its opinion that "the judgment of the trial court is affirmed in so far as the right of possession of the five bales of cotton is concerned, and the further fact that under the circumstances the lien of the landlord, as it relates to the tenant's portion of the crop, is inferior to that of the mortgagee." However, the court proceeded to say that the lower court should have had an accounting between Hays and the bank, and specifically set up that the matters could be determined in the acts "now pending and undisposed of." which, of course, referred to the present case.

From a careful examination of the opinion, we are inclined to believe that this court intended that a complete accounting should be had between all the parties, and should it be determined, after an accounting was had, that the bank was indebted to John Hays in a sum equal to the amount of the bales of cotton sold to the Baker Cotton Oil Company, that the sale would then be held to transfer a legal title. In the accounting the court found that the bank was indebted to Hays for more than the amount which Hays had received by reason of the sale of the cotton to the Baker Cotton Oil Company, and for that reason the lower court was justified in finding that a legal title passed to the Baker Cotton Oil Company at the time of the sale.

It is next contended that Ingram acted as the agent of Hays. We find no merit in this contention. Ingram was vice-president of the First National Bank, and one of its active officers, and all of his acts indicated that his principal interest was the business of the bank. It is true that Hays authorized Ingram to sign a contract and perhaps perform other business for him. But after an examination of the testimony, we cannot agree that he was the authorized agent of Hays in all these transactions, and that Hays was bound by his action, especially as between Hays and the First National Bank.

The record in this case is very voluminous, and we have made a thorough examination of the same, and while we find the testimony conflicting, and in many cases rather difficult to understand, we believe, after a careful examination of the same, that there is ample testimony in the record to warrant the lower court in arriving at the judgment in this case.

For the reasons herein given, the judgment of the lower court should be and is hereby affirmed.

BENNETT, TEEHEE, LEACH, and REID. Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. p. 879, §2853; anno. L. R. A. 1916B, 565; 2 R. C. L. p. 203;

1 R. C. L. Supp. p. 442; 4 R. C. L. Supp. p. 91; 5 R. C. L. Supp. p. 81. (2) 11 C. J. p. 628, §341. (3) 4 C. J. p. 1129, §3122.