# TURNER v. WILCOX.

## No. 1587.   Opinion Filed February 6, 1912.

### (121 Pac. 658.)

1. **LANDLORD AND TENANT—Possession of Premises—Holding Over.** Where landlord and tenant are negotiating for a new lease for farm land at the time of the expiration of the original lease, and the tenant remains in possession pending the negotiations, with the express or tacit consent of the landlord, the landlord is estopped from treating the tenant as holding over for another term under the condition prescribed in the original lease, but the tenant becomes a tenant from year to year.

2. **SAME—Rent—Attachment.** Under section 4101, Comp. Laws 1909, a landlord is entitled to an attachment on the crops grown by his tenant whether the rent be payable in money or other things, in case the tenant has within thirty days removed, or is removing, or intends to remove, his property, or crops, or any part thereof, from the leased premises, and neither the intent of the tenant in removing, nor the distance, nor the place to which the crops or portions thereof, or other property is removed, is material. It is the removal, or the intent to remove, which is the justification for the attachment.

3. **SAME.** In a case where the undisputed evidence and admitted facts show that the tenant had paid the landlord no rent for a farm, but had removed a large portion of the crop grown thereon and deposited the same in an elevator in a town, it was error for the court to refuse to sustain an attachment brought under section 4101, Comp. Laws 1909.

(Syllabus by Robertson, C.)

*Error from District Court, Canadian County;*
*John J. Carney, Judge.*

Action by George P. Turner against Bert Wilcox.   Judgment for defendant, and plaintiff brings error.   Reversed and remanded, with instructions.

*Chas. H. Garnett,* for plaintiff in error.

*Phelps & Cope,* for defendant in error.

Opinion by ROBERTSON, C.   Plaintiff in error, who was plaintiff below, commenced this action against defendant in

error, who was defendant below, in the district court of Canadian county on the 3d day of October, 1908, and alleged in his petition, in substance, that he was the owner of a certain farm in Canadian county; that defendant entered into possession of said premises as tenant on or about the 1st day of January, 1907, under a written lease for a period of one year; that at the end of the year 1907 the defendant, with the assent of the plaintiff, held over in possession of said premises for the year 1908; that the rent for the premises for the year 1908 had not been paid by the defendant according to the terms and provisions of the said lease, and that said premises had not been cultivated and cared for by the defendant as provided for in said lease, for which plaintiff asked damages. And he further alleged that the defendant had begun to gather and market the crop grown on the premises, without the consent of the plaintiff and without having first delivered and set apart to the said plaintiff his share of the said crop as rent, and that plaintiff claimed a lien as landlord on the premises for the year 1908 for the rent thereof, and prayed for judgment for damages and his rent, and that an attachment be issued and levied upon the crops grown on said premises. On the same day he filed his affidavit in attachment, also an undertaking which was duly approved by the clerk of the court, and a writ of attachment was issued, and was levied upon the crops grown on the premises. On the 11th of November, 1908, the defendant made a forthcoming bond, and thereby secured the release of said crops from the levy of said attachment. On December 21, 1908, defendant filed his answer, which was a general denial, except that he admitted that plaintiff was the owner of the premises, and that the defendant went into possession thereof under a written lease on January 1, 1907, but denied specially that he held over under the terms and conditions of said lease, and he prayed judgment for costs and for the discharge of the attachment. On the issues thus formed by the pleadings the cause was tried before a jury on March 25, 1909, and a verdict returned for the defendant for his costs. Motion for new trial was presented, considered, overruled, exceptions

taken, and the plaintiff prosecutes this appeal to reverse said judgment.

The first error complained of, and treated in the brief of plaintiff in error, is, that the court erred in permitting defendant to introduce evidence showing the usual and customary rental for premises, such as the farm in question, in the neighborhood where this farm was situated.

The second assignment of error is that the court erred in refusing to give instructions numbered 1 and 2, requested by the plaintiff, which stated that as a matter of law the terms of the lease for the year 1907 would extend to the year 1908, and would govern the payment of rent for that year. The determination of the second proposition will suggest the answer to the first, and we will therefore consider the second specification of error first. Plaintiff in error contends that a tenant holding over after the expiration of a written lease for a year, with the assent of the landlord, and without making and signing a new lease, holds over under the terms of the old lease. As a general proposition, subject to some exceptions, this was true under the common law, and also under the statute in force in this state, and the many authorities in support of this doctrine cited by plaintiff in error amply sustain this contention, and their correctness is conceded by defendant in error. However, this is but a presumption of law and a rebuttable presumption at that, and when the undisputed facts show that the parties are negotiating for a new lease, and the tenant remains in possession with the understanding, or by acquiescence, of the landlord, pending such negotiations, the landlord cannot treat him as a tenant holding over under the old term. In this case the defendant in his answer charged that, while he remained in possession of the premises, yet that his holding over is not by virtue of the 1907 lease, but by reason of negotiations for a new lease, which were pending between the parties long prior to the termination of the former term, and in such case the burden is on the landlord to show that the holding over is under and by virtue of the terms of the old contract. In this case the testimony, while conflict-

ing, warrants us in saying that there was a holding over by the tenant, but the jury found by its general verdict that it was not by virtue of the terms of the 1907 contract, and this verdict is·sustained by the testimony, which shows that in September, 1907, the parties had a conversation relative to the occupancy of. the farm for the next year; that the tenant at that time objected to the terms of the old contract, and stated that, while he wanted the farm for the year 1908, yet he would not assent to some of the conditions imposed by the old agreement, and it further appears from said conversation that the landlord agreed to eliminate certain terms and conditions of the same, but as to the extent of the modification we cannot determine from the record. The subject was again considered by the parties some time in January, 1908, and the landlord at that time submitted a. written lease to the tenant for his signature, who for some reason or other failed to sign it. The testimony further shows that the landlord called the tenant's attention to this lease, and several times requested him to sign it, but that finally in April the tenant refused to sign the same, giving as his reasons for such refusal that the terms were unsatisfactory. Whereupon the landlord suggested that the tenant draw a lease in accordance with his ideas, and submit the same to the landlord, which was done, but that one was unsatisfactory to the landlord, and it was never signed. These facts are cited merely to show that there was a dispute between the parties as to the supposed terms of the tenancy, and that the parties did not intend to rely upon the old contract, but that they were then negotiating for a new lease agreement.

Counsel for plaintiff, in support of his contention, cites the rule laid down in 24 Cyc. 1031, that:

"Where a tenant, under a demise for a year or more, holds over at the end of his term without any new agreement from the landlord, he may be treated as tenant from year to year" —and cites in addition thereto section 4076, Comp. Laws 1909, which reads as follows:

"When premises are let for one or more years and the tenant, with the assent of the landlord, continues to occupy the

premises after the expiration of the term, such tenant shall be deemed to be a tenant from year to year."

But the above has reference solely to those cases where there is no agreement between the parties to change or alter the terms of the tenancy, or, rather, to those cases where nothing has been said by the parties relative to the same, the presumption being in such case that it is the intent of the parties to continue the relation of landlord and tenant under the identical terms of the old lease. In the case at bar, as has been seen, the old lease was in effect abrogated because the tenant had told the landlord, in September, before the term ended, that, while he would like to remain on the farm for the year 1908, yet he would not remain under the terms of the old contract, and the landlord by then and there agreeing to eliminate the objectionable feature, as suggested by the tenant, thereby acquiesced, so to speak, in the abrogation, or rather the termination on January 1, 1908, of the old lease contract. In *Leggett v. La. Pur. Ex. Co.,* 157 Mo. App. 108, 137 S. W. 893, it was held that:

"Where a tenant holds over after the end of his term, the common law presumes an intention to continue the tenancy for a similar term, and on the same conditions as to rental stipulated in the lease, and all that is necessary to complete the contract for such new term is the acquiescence of the landlord."

A similar holding by the same court in *Leggett v. La. Pur. Ex. Co.,* 134 Mo. App. 175, 114 S. W. 92, is cited by plaintiff in error as supporting his position, but it will be noticed that the court in both cases held further, and especially in the case decided in 1911, that:

*"Where landlord and tenant are negotiating for a new lease at the time of the expiration of the original lease, and the tenant remains in possession pending the negotiations,* with the express or tacit consent of the landlord, the landlord is estopped from treating the tenant as holding over for another term on the conditions prescribed in the original lease, but the tenant becomes a tenant at will." (Italics ours.)

This case also holds that, where a matter turns on a question of intention (as it does in the case at bar), it is relevant

to show the situation at the time in order to reach the truth as to the intentions of the parties.

In 24 Cyc., at page 1014, the rule laid down is that the presumption of a continuance of the tenancy upon the same terms, or of the character of the tenancy, from remaining in possession after the expiration of the terms, is a rebuttable one, although it will not be overcome merely by the intention of the tenant, and it will not conclude either party as against proof of a different agreement between the landlord and the tenant, or of facts which are inconsistent with the presumption. In this case there was testimony, not only from the tenant in support of his position, but also he was corroborated by the testimony of the landlord to the effect that negotiations for a new lease were pending prior to the termination of the old term, as well as for several months subsequent thereto, and it seems to be a well-settled rule that whether or not the tenant holds under the terms and conditions of the former lease is a question of fact, to be determined by the jury under proper instructions (*Grant v. White,* 42 Mo. 285; *Withnell v. Petzold,* 17 Mo. App. 669; *Prosser v. Pretzel,* 8 Kan. App. 856, 55 Pac. 854); and, where there is evidence on material issues reasonably tending to support the verdict of the jury, the same will not be disturbed by this court on appeal.

The presumption raised by the section of our statute above cited, having been rebutted by proof of a different agreement between Turner and his tenant, or, more strictly speaking, by an agreement to make a new contract eliminating certain objectionable features of the old, and thereafter failing to agree upon the terms, shows beyond question that Wilcox did not hold over under the terms of the 1907 lease, but was in fact a tenant from year to year, and the measure of recovery for rent for the year 1908 was therefore, under the facts of this particular case, correctly stated by the court in his instructions to the jury, and this, therefore, disposes of the first specification of error hereinabove referred to, and no further consideration of this phase of the case need be given.

Having concluded that Wilcox did not hold over under the terms of the 1907 lease, it becomes evident that no error was committed by the court in admitting testimony offered by defendant, showing the usual and customary rental for premises such as the farm in question in the same neighborhood.

Therefore, the only remaining question in this case to be considered is: Was the attachment in this case wrongfully issued? Section 4098, Comp. Laws 1909, reads as follows:

"Any rent due for farming land shall be a lien on the crop growing or made on the premises. Such lien may be enforced by action and attachment therein, as hereinafter provided."

Section 4101 reads as follows:

"When any person who shall be liable to pay rent (whether the same be due or not, if it be due within one year thereafter, and whether the same be payable in money or other things), intends to remove or is removing, or has within thirty days removed his property, or his crops, or any part thereof, from the leased premises, the person to whom the rent is owing may commence an action in the court having jurisdiction; and upon making an affidavit, stating the amount of rent for which such person is liable, and one or more of the above facts, and executing an undertaking as in other cases, an attachment shall issue in the same manner and with the like effect as is provided by law in other actions."

Section 4102:

"In an action to enforce a lien on crops for rent of farming lands, the affidavit for attachment shall state that there is due from the defendant to the plaintiff a certain sum, naming it, for rent of farming lands, describing the same, and that the plaintiff claims a lien on the crop made on such land. Upon making and filing such affidavit, and executing an undertaking as prescribed in the preceding section, an order of attachment shall issue as in other cases, and shall be levied on such crop, or so much thereof as may be necessary, and all other proceedings in such attachment shall be the same as in other actions."

In this case the undisputed facts show that Wilcox was Turner's tenant; that he was liable to Turner for rent for said land, and that nothing had been paid by him to Turner on the rent; that Turner had a statutory landlord's lien on the crops grown on said land to secure the payment of the rent; that this

action was begun on October 3, 1908, and the attachment issued the same day; that the tenant had gathered a large portion of the crops within 30 days prior to the issuance of the attachment, and was engaged in gathering and removing the same at the time the attachment was served; that he had removed the same from said farm and deposited it in an elevator in the town of Yukon; that no agreement had been reached by the parties as to what amount of the crop Turner was to have, or Wilcox was to give. Under these facts and provisions of the statute cited above, Turner undoubtedly had a cause of action and a right to an attachment on October 3, 1908. These facts are undisputed. On the contrary, they appear affirmatively of record, and stand admitted by the parties. Turner never waived his landlord's right, nor is it anywhere in the record charged that he did, and, in fact, no attempt was made to show that he had. In *Knowles v. Sell*, 41 Kan. 171, 21 Pac. 102, the Supreme Court of Kansas, in discussing this question, under a statute identical with paragraph 4101, *supra*, says:

"It is admitted by the defendant that he took the 22 bushels of corn from the premises without the consent or knowledge of the plaintiff, and there was no testimony showing that there was any other amount of grain removed. It is also apparent from the evidence that this load of corn was not taken away for the purpose of hindering or delaying the plaintiff in the collection of his rent, or with any intent to defraud him. The testimony shows, further, that there was 1,500 bushels of corn grown on the place that year. Under these facts, the question is presented whether the removal of this part of the crop is sufficient to sustain an attachment by the landlord, who claims a lien thereon. Section 24 of chapter 55 provides that the landlord shall have a lien upon the crops growing or made upon the premises, and such lien may be enforced by action and attachment therein. Under this statute his lien extends to the entire crop that may have been grown, not simply to any part of it; and in keeping with its provisions said section 27 provides in plain terms that the removal of any part of the crop from the premises is ground for an attachment. It does not require any intention of the tenant to delay, hinder, or defraud the landlord. By the terms of this statute the intent of the party is immaterial. The simple fact of removal is enough. The language of the

statute compels this construction. No other could be given without doing violence to the language used. If the motive of the tenant was material, then probably the judgment would have been correct, and the manner of removal and the purpose of defendant would have been proper matters to have been inquired into, but under the view we take of the case all that it was necessary for the plaintiff to establish was that the tenant had removed an appreciable part of the crop within 30 days without the consent of the landlord."

In a later case, viz., *Harmon v. Payton,* 68 Kan. 67, 74 Pac. 618, it was said:

"It would seem clear that, under the facts found in the case at bar, the attachment should have been sustained. While the tenants were authorized, under the contract as found, to dispose of the broom corn and pay the landlord his share in money, and while the kaffir corn had been cut and delivered to the landlord in accordance with the custom of the neighborhood, there being no contract regulating the matter, yet the field corn was still to be husked and delivered, and the landlord had the right to his lien upon the entire crop to compel this. Under the statute quoted, a landlord is not required to rely upon the promise or purpose of the tenant to carry out his part of the contract. He is given a lien upon the entire crop to secure from the tenant the performance of his contract, and the tenant may not remove any appreciable portion of the same, no matter how good his purpose, without subjecting himself to the penalty of the statute, except by the consent of the landlord or a waiving of the lien. In this case there were neither pleadings nor findings that he had waived this lien, while the jury find that the tenants owed the landlord nothing at the time of the commencement of his action. This finding was based upon the fact that the time for husking and delivery of the field corn had not then arrived. This, however, would be immaterial, as the lien continued until the rent had been paid or the share delivered. If the rent is to be paid in a share of the crop, it is the landlord's right to have this matter adjusted, and his share delivered, before the tenant removes any portion from the premises. This right inheres in the contract of rental, and, if the tenant removes any portion of the crop, he breaks his contract, and the landlord may then recover from the tenant the value of his share at the time it should have been delivered, in money, the same being secured by an attachment."

Turner, without doubt, had a cause of action against Wilcox on October 3, 1908, and was entitled under the provisions of our statute to sue out an attachment and to have the same levied on the crops grown on his land. This statute gives to the landlord a positive right to an attachment to crops grown on his land when the tenant intends to remove, or is removing, or has within 30 days removed, his property, or his crops, or any part thereof, from the leased premises; and neither the intent of the tenant in removing, nor the distance, nor the place to which the crops or other property is removed, is material. It is the removal, or the intent to remove, which is the justification for the attachment. As was well said in *Masterson v. Bentley*, 60 Ala. 520:

"The language of the statute renders it incapable of any other construction, and no other can be given it. So long as the crop remains on the rented premises, the lien of the landlord will prevail over any alienation the tenant may make of it. * * * Therefore, whenever, by the removal, the lien of the landlord is left in peril, is liable to be defeated by an alienation, which could not be affected so long as his crop remained upon the demised premises, the right of the landlord to his attachment is conferred by the statute."

It therefore follows that, as to this phase of the case, Turner was entitled to a judgment, holding that the attachment had properly issued, and sustaining the same, and for costs of the action, and it became and was the duty of the court, under the undisputed facts of this case and the law applicable thereto, to enter judgment sustaining the attachment and to tax the costs of the action to the defendant. There being no dispute whatsoever as to the facts on this phase of the case, the same should not have been submitted to the jury, nor can we say from the record before us that it was.

As to the first proposition, the judgment of the court as entered on the general verdict of the jury in favor of the defendant was undoubtedly correct.

The judgment is silent as to the attachment proceedings, yet this phase of the case should have been covered, and for the

reasons hereinabove given, the judgment, in so far as the attachment proceedings are concerned, should be reversed and the cause should be remanded to the district court of Canadian county, with instructions to modify the judgment so entered, so as to hold that the attachment was properly issued and levied, and to tax the costs in both courts to the defendant in error.

By the Court: It is so ordered.