## DORSETT et al. v. WATKINS.

No. 7369—Opinion Filed June 20, 1916.

(158 Pac. 608.)

**1. Landlord and Tenant — Rent — Lien — "Farm."**

A "farm," within the meaning of the statute giving the landlord a lien for rent, in standard and common acceptation, means a body of land under one ownership, devoted to agriculture, either to raising crops, or pasture, or both.

**2. Same—Enforcement of Lien.**

The lien given for rent by section 3806, Rev. Laws 1910, extends to all products produced thereon, and may be enforced by attachment in a proper action against all or any part of such products.

**3. Chattel Mortgages—Landlord and Tenant —Rent—Lien—Priority.**

The lien given the landlord for rent by section 3806 is not dependent upon a written contract, but arises from the relationship of landlord and tenant, and is superior to a mortgage lien given on the crops by the tenant.

**4. Landlord and Tenant — Rent — Lien — Property Subject.**

Where the rent contract for the lease of 200 acres of land, embracing 135 acres of cultivated land and 65 acres of pasture, stipulates that the rent on the cultivated land shall be payable in certain parts of the crop produced, and the rent for the pasture shall be payable 50 cents per acre, held, that the lien for the rent due upon the pasture land extends to and may be enforced against the crops grown on the cultivated land.

(Syllabus by Galbraith, C.)

Error from District Court, Jefferson County; Frank M. Bailey, Judge.

Action by F. E. Watkins against Tom Dorsett, in which the First National Bank of Ryan intervenes. Judgment for plaintiff, and defendant and intervener bring error. Affirmed.

Guy Green and Jos. T. Dillard, for plaintiffs in error.

W. Y. Dilley, for defendant in error.

Opinion by GALBRAITH, C. F. E. Watkins, as landlord, commenced this action in the court below against Tom Dorsett, his tenant, to recover rent claimed under a farm lease, and caused an attachment order to issue, and certain crops grown upon the leased premises to be seized thereunder. The First National Bank of Ryan, claiming a part of the property, to wit, certain cotton, under a chattel mortgage executed to it by the tenant, intervened, contending that its mortgage lien was superior to the claim of the landlord's lien. A jury was waived, and there was trial to the court upon an agreed statement of facts, and judgment rendered for the plaintiff against the tenant and intervener, from which an appeal has been duly prosecuted to this court.

It was agreed that F. E. Watkins entered into a lease contract with Tom Dorsett, by which the former let and leased to the latter the west 200 acres of the S ½ of section 15, township 6 S., range 7 W., in the county of Jefferson, state of Oklahoma, for the year commencing January 1, 1913, and ending December 31, 1913; that the tenant agreed to plant 50 acres or more of said land to cotton, and the balance of the cultivated land to wheat, oats, kaffir corn, maize, and peanuts, and that the cultivated land embraced an area of 135 acres and the pasture land an area of 65 acres; that the tenant agreed to pay as rental for said premises one-third of the oats, wheat, corn, and other feed crops, and one-fourth of the cotton raised on the land, and also to pay 50 cents per acre for the pasture land. It is also agreed that the tenant has paid the rental on all of the cultivated land, and that this action is for $32.50, the rent due upon the grazing land, and that the tenant had, within 30 days next preceding the filing of the action, commenced to remove the crops from the cultivated land, and had removed cotton to the amount of $32.50; that the tenant was willing to sell the cotton so removed and pay the rent on the grazing land, but that the First National Bank of Ryan, the mortgagee of the cotton, would not permit this to be done, and that the amount of rent claimed was due and unpaid. It is also agreed that the rent contract between the landlord and the tenant was not placed of record, and that the chattel mortgage given by the tenant to the bank was properly recorded.

The defendant in error presents a motion to dismiss upon the ground that the case-made fails to show that the order extending the time for making and serving the case-made was ever filed with the clerk and entered upon the journal. While this is true, the journal entry of the order extending the time is set out in the case-made, and from this it affirmatively appears that the order was made in open court. This is sufficient evidence that the order was made. Holmberg v. Will, 49 Okla. 138, 152 Pac. 357. The motion to dismiss is therefore denied.

It is insisted by the plaintiffs in error that the landlord had no lien, for the rent due on the grazing land, on the cotton and other products grown on the cultivated land, and that therefore his attachment was improperly sued out, and that the mortgage lien of

the bank on the crop was superior to the claim of the landlord for rent. The statute (section 3806, Rev. Laws 1910) giving the landlord a lien for rent reads as follows:

"Any rent due for farming land shall be a lien on the crop growing or made on the premises. Such lien may be enforced by action and attachment therein, as hereinafter provided."

The sections following make provision for the method of enforcing the landlord's lien for rent.

The case of Eckhardt v. Taylor, 90 Kan. 698, 136 Pac. 218, relied upon by the plaintiffs in error to sustain their contention that the landlord's lien for the rent due for the grazing land cannot be enforced against crops grown upon the cultivated land, does not support that contention. The claim sought to be enforced in that action was partly for rent and partly for damages arising under the rent contract, and the attachment issued on behalf of the landlord was levied upon a quantity of hay and upon some live stock. When the court found that the attachment permitted by the statute to the landlord to enforce a lien for rent had not been complied with, and that the ground for the attachment set out in the affidavit was that set out in the general statute authorizing attachments for the enforcement of claims for debt, the suggestion was made in the argument that crops grown on the premises only were subject to the landlord's attachment for rent, but the court did not hold in that case that, if the farm rented by the landlord to the tenant embraced cultivated land and grazing land, and the cultivated land included cotton land, corn land, wheat land, oats land, millet and kaffir corn, the landlord did not have a lien for his rent on the crops growing or made on the premises or any part thereof for the rent due on the grazing land.

"Farming land," as used in the statute, does not mean simply cultivated land. In Gafney v. Kenison, 64 N. H. 354, 10 Atl. 706, the court held that a farm "includes the meadow land." In Commonwealth v. Carmalt, 2 Bin. (Pa.) 235-238, the court said:

"Books have been cited to show the meaning of the word 'farm.' It does not appear that the English affix a meaning to that word different from our idea of it. But, if they did, it would signify nothing. We must understand it as it is generally understood in Pennsylvania. By a farm we mean an indefinite quantity of land, some of which is cultivated. Most farms contain parcels of land applied to different purposes. Some are used for the cultivation of grass, some of grain, and some remain in wood. It is very common for the proprietors of farms to have a piece of woodland, not contiguous to the place of their residence, but appurtenant to it. I can see no reason why those different parcels of land should not be reckoned as one farm; nor has any authority been cited to the contrary."

In re Drake (D. C.) 114 Fed. 229, at page 231, in discussing the meaning of the word "farming" as used in the Bankruptcy Act, the court said:

"Nor will it profit to trace historically the meaning of the word 'farming.' In its purely agricultural sense, its use is comparatively modern. Within the purview of this statute it is understood to mean the business of cultivating land. or employing it for the purposes of husbandry; and a farm is a tract devoted to cultivation under a single control, whether it be large or small, isolated or made up of many parcels. For a long time after the words began to be used in an agricultural sense, they were applied to lands held on lease, and 'demise, lease, and to farm let' are still the operative words of a lease, but they are in modern use, applied without respect to nature of tenure. Robinson Crusoe says, 'I farmed upon my own land,' so it appears that the words have been used in their present sense for nearly 200 years."

In Kendall v. Miller, 47 How. Prac. (N. Y.) 446, at page 448, the Supreme Court of New York said:

"In more modern times the word 'farm' has received a still more extended signification, and now denotes, in this country, both in a popular and legal sense, a considerable tract of land, devoted, in part at least, to cultivation, with suitable buildings, and under the supervision of a single occupant, regardless of the nature or extent of his tenure."

In Williams v. C. & N. W. R. Co., 228 Ill. 596, 81 N. E. 1135, the Supreme Court of Illinois said:

"The word 'farm' has a well-defined meaning. The Standard Dictionary defines a farm as 'a tract of land under one control or forming a single property, devoted to agriculture stock raising. dairy produce, or some allied industry.' Worcester's Dictionary defines it as 'a tract of ground cultivated or designed for cultivation by a farmer.' Webster's Dictionary defines it to be 'a piece of ground devoted by its owner to agriculture.' In People v. Caldwell, 142 Ill. 434. 441 [32 N. E. 691, 693]. this court defined a farm as 'both by the standards and in common acceptation * * * to be a body of land, usually under one ownership, devoted to agriculture, either to the raising of crops, or pasture, or both.' "

Under these authorities it seems clear that the grazing land included in the lease involved in this case was a part of the farm leased by the landlord to the tenant. It was included in the contract of lease and was occupied by the tenant. It was contiguous to

and appurtenant to cultivated land, and was a part of the farm.

In Collier et al. v. Gannon, 40 Okla. 275, 137 Pac. 1179, the court, after quoting the sections of the statute in regard to the landlord's lien for rent, says:

"These sections being construed together, it is obvious that the remedy is cumulative; that the landlord may elect to take his share of the crop, or, if the tenant disposes of the landlord's share, then he may elect to enforce his lien by attachment, for in section 3809, supra, it is provided that, whether the rent 'be payable in money or other things,' an attachment may issue. The contention that an attachment will not lie to enforce the landlord's lien where the rent is payable in kind or a certain portion of the crop is without merit."

The Supreme Court of Kansas in Knowles v. Sell, 41 Kan. 171, at page 173, 21 Pac. 102, says:

"Section 24, c. 55, provides that the landlord shall have a lien upon the crops growing or made upon the premises, and such lien may be enforced by action in attachment therein. Under this statute his lien extends to the entire crop that may have been grown, not simply to any part of it."

The Supreme Court of Arkansas says:

"The landlord's lien extended to the whole crop. The specific rents, in several kinds of crops, were agreed modes of satisfaction. If not paid, the landlord's lien for their value remained; overflowing all crops of every kind." Lemay v. Johnson, 35 Ark. 225, at page 231.

To hold, as contended by the plaintiffs in error, that the landlord's lien for rent due for the pasture land, can only be enforced against the products grown on that land, or that the rent due on the land cultivated to wheat or to cotton can only be collected from wheat or cotton produced on such land, would be too narrow a construction of the terms used by statute giving the landlord's lien, and would not be in keeping with either the popular or the legal sense of the terms used therein. Pasture lands are just as essential to the farm as cultivated lands, and are equally as profitable to its successful operation. The horses used in cultivating the crops, and the cows that supply the table with necessary food, cannot be properly cared for without the pasture land.

From the agreed statement of facts it appears that there was but one contract made between the landlord and the tenant, and under this contract the farm of 200 acres was leased, and the rental agreed upon. Inasmuch as the statute giving the lien to the landlord for the rent extends to all of the crops grown upon the leased premises, we conclude that the trial court was right in holding that the landlord's lien for the rent on the grazing land extended to and may be enforced against the crops grown upon the cultivated land embraced in the farm. The fact that the rent contract between the landlord and the tenant was not recorded cannot affect the landlord's lien. The lien did not arise by virtue of the contract between the landlord and the tenant, but by virtue of the statute and the relationship, and no written contract of lease was necessary to the existence of or to enforcement of the landlord's lien. Therefore the fact that the contract was not recorded does not affect the lien. Turner v. Wilcox, 32 Okla. 56, 121 Pac. 658, 40, L. R. A. (N. S.) 498; Earl v. Tyler et al., 36 Okla. 179, 128 Pac. 269.

The landlord's lien for the rent was superior to the chattel mortgage lien under which the bank claimed the attached property (Crump et al. v. Sadler, 41 Okla. 26, 136 Pac. 1102); the mortgage having been given after the relationship of landlord and tenant existed.

Finding no error in the record, we conclude that the judgment appealed from should be affirmed.

By the Court: It is so ordered.