WADE et al. v. BURKHART et al.

No. 32032. March 26, 1946.

*167 P. 2d 357.*

Brown & Cund and Gilbert H. Bond, all of Duncan, for plaintiffs in error.

L. A. Winans, of Duncan, and Bailey & Hammerly, of Chickasha, for defendants in error.

HURST, V. C. J. This is an action to quiet title to a 40-acre tract of land in Stephens county, commenced on April 17, 1936, by Myrtle Burkhart, Pauline Green, and Geraldine Green against the defendants, Lee Wade, Charles H. Wade, and the Gulf Oil Corporation. From a judgment in favor of the plaintiffs, Lee Wade and Charles H. Wade appeal. The company does not appeal.

The case was tried in April, 1944, on the fourth amended petition and the answers thereto. The plaintiffs claim title by inheritance from W. B. Green, who died on October 26, 1926, Myrtle Burkhart being his widow and the other plaintiffs being his only children

Charles H. Wade claims title under a deed from Lee Wade executed on January 22, 1936. Lee Wade claimed title under a deed executed by Green and wife on November 29, 1919. The oil company claimed under an oil and gas lease from Lee Wade executed November 4, 1935.

The issues made by the pleadings and evidence are these: (1) Was the consideration paid for the deed to Lee Wade? (2) Was that deed delivered? (3) If the consideration was paid and the deed delivered, do plaintiffs have title by prescription? (4) Is Charles H. Wade an innocent purchaser, for value and without notice of the claims of the plaintiffs? (5) Did the court commit error in permitting Myrtle Burkhart to testify that the name of the grantee in the deed to Lee Wade was left blank at the time of its execution?

The evidence largely relates to the question of whether the deed to Lee Wade ever became effective. That deed was recorded on November 1, 1935, nearly 16 years after it was delivered.

It is the theory of the plaintiffs that the consideration for said deed was never paid and that the deed was placed in escrow in the hands of Green's attorney, Henry W. Sitton, and that after the death of Sitton, in September, 1935, Lee Wade, by some unlawful means, obtained possession of the same and caused it to be recorded in an effort to defraud the plaintiffs out of said land.

It is the theory of the defendants that Lee Wade deposited the consideration for said deed in the Duncan National Bank a few days after it was executed, and after his attorneys had examined the abstract of title, and that the deed, which was held in escrow in said bank, was then delivered to him; that soon thereafter he took sick with influenza and while he was sick the deed became lost; and that he found it among his mother's papers after her death in September, 1935, and immediately caused it to be recorded.

Considerable evidence was introduced in support of the theories of the respective parties.

The evidence on behalf of the plaintiffs establishes that Green remained in possession of the land until his death in 1926, collecting the agricultural rents from a tenant, who held under a lease, on this and other land, made prior to the execution of the deed; that in 1924 he executed two mortgages on this and other land; that in 1925 he executed an oil and gas lease thereon; that he wrote letters in 1924 and 1925 in regard to the taxes and an oil and gas lease on this land. The evidence discloses that after the death of Green, the plaintiffs remained in possession; that they collected the agricultural rents on said land until the trial; that the land was listed among the assets of Green's estate and appraised and set over to his heirs in the decree of distribution; that in 1928 they made a five-year agricultural lease thereon; that the land was assessed in Green's name from 1919 to 1935, inclusive, and in the name of the W. B. Green Estate in 1936; that Green and the plaintiffs paid the ad valorem taxes thereon from 1919 to 1932, inclusive, and from 1936 to 1942, inclusive, and that Lee Wade paid the taxes for the years 1933, 1934, 1935, and 1943, but the record does not show just when the taxes were paid for each of said years; that the name of the grantee in the deed was in different type from that used in filling out the other portion of the deed; that Marion Spears was in possession of this and other land as tenant under Green and the plaintiffs for seven years commencing in 1919; that Joe R. Payne was in possession of this and other lands as tenant under the plaintiffs for eight years commencing in January, 1929; and that Lee Wade never advised Spears that he claimed to own said land, nor did he advise Payne of any such claim until after the deed was recorded.

Mrs. Burkhart testified that at the time the deed under which Lee Wade claims was executed by her and her husband the name of the grantee was left blank, and the deed was left in

escrow with Mr. Sitton; that no consideration was ever paid to her or her husband for the deed; that they did not authorize the delivery of the deed; that neither Lee Wade nor Charles H. Wade ever said anything to her about their claim of ownership or right to possession of the land; that she never saw the deed from the time it was executed to the time of the trial; that she never heard of Lee Wade until he caused said deed to be recorded.

Lee Wade testified that a few days before the deed was executed he met Green on the streets of Duncan and suggested that he might pay him $1,000 for the land; that thereafter he again met Green and told him he would buy it, and Green told him he would leave the abstract and deed at the Duncan National Bank; that thereafter Mr. Wall, vice president of said bank, told him the deed and abstract were in the bank; that he then had the abstract examined, and he introduced in evidence the attorneys' opinion thereon, dated December 8, 1919; that, to satisfy a title requirement, he procured the patent to the land; that thereafter he signed a note to the Duncan National Bank for $1,000 and deposited the $1,000 so borrowed to the credit of Green, and the abstract and deed were then delivered to him; that he put the deed in his pocket and the abstract and patent in his car; that on December 16, 1922, he paid the First National Bank of Duncan (with which the Duncan National Bank had been merged) $1,041.67 to take up said note and introduced his canceled check in evidence; that in February or March of 1920 he discovered that he had lost the deed; that in 1922 he consulted Mr. Sandlin, of the law firm of Sandlin & Winans, in regard to his rights, and Mr. Sandlin advised him that it was doubtful if he could recover the land by suit and that he should ask Green for another deed; that Mr. Winans was called in by Mr. Sandlin for advice on the question as to whether he should pay the taxes; that in 1924 he saw Green about the matter and Green told him he would make another deed, but he did nothing further about procuring such a deed.

He introduced in evidence a canceled check for $3. dated November 15, 1922, made payable to Sandlin & Winans, which he testified was given in payment for said advice. Mr. Winans testified that he personally endorsed said check and that it was for services performed by him, since the arrangement between him and Sandlin was a limited partnership and each collected and retained the fee for services performed by him, but he could not say what the check was given for, although he was positive that Lee Wade never consulted him about a lost deed. Lee Wade admitted that he had made no effort to get possession of the land and had not advised the tenants in possession of his claim, and he testified that he paid no taxes on the advice of Mr. Sandlin because payment of taxes would not establish his title. Sandlin died prior to this trial, and his testimony was not available. Lee Wade testified that this land was surrounded by other pasture land and was used in connection with the other land, the fences having been torn down. He testified that in 1924 he leased the land for grazing purposes for five years, and received the rent therefor, but the lessee, Harrell, never used the land; that he did not insert his name in the deed as grantee, and that it is now in the same condition it was in when the bank delivered it to him.

1. A suit to quiet title is one of equitable cognizance in which we will weigh the evidence but will not disturb the finding of the trial court unless it is clearly against the weight of the evidence. Lasswell v. MvNutt, 195 Okla. 548, 159 P. 2d 739; Hampton v. Kessler, 193 Okla. 619, 145 P. 2d 955.

After weighing the evidence and considering the circumstances that tend to sustain the contentions of the respective parties, we are unable to say that the finding of the trial court, implied in the judgment, that the consideration was never paid and the deed was never delivered so as to make it an effective conveyance, is clearly against the weight of the evidence. Some of the documentary evidence and the conduct of the

parties strongly support the theory of the plaintiffs, while some of the documentary evidence supports the theory of the defendants. Much depends upon the demeanor of the witnesses and their veracity. The trial court was in a much better position to pass upon their credibility and the value to be given their testimony than is this court from a reading of the record.

The defendants rely upon the rule that a deed, valid on its face and properly acknowledged, may not be impeached by the uncorroborated testimony of the grantors, but the testimony of Mrs. Burkhart is corroborated by the documentary evidence and the circumstances of possession and other evidence above outlined, which is more consistent with the theory of the plaintiffs than with that of the defendants. Winn v. Willmott, 138 Okla. 177, 280 P. 808. Furthermore, she admitted the execution and acknowledgment of the deed and does not attempt to impeach its execution, and the rule relied upon is probably not applicable on the issue of delivery and payment of the consideration.

The trial court referred to the fact that the records of the bank were not produced to corroborate Lee Wade's testimony that he deposited the consideration to the credit of Green. No explanation was made of his failure to produce them.

Having reached the conclusion that the finding as to delivery and payment of consideration are not clearly against the weight of the evidence, it is not necessary to pass upon the contention of the plaintiffs that they have acquired title by prescription.

2. The error, if any, in permitting Mrs. Burkhart to testify that the name of the grantee was not in the deed at the time it was executed and delivered to the escrow holder, in view of the allegation in her petition that the deed was to Lee Wade, is harmless. That was only one of the circumstances on which she relied, and did not go to the decisive issue of consideration and delivery.

3. There is no merit in the contention of Charles H. Wade that he is shown to be an innocent purchaser, for value and without notice. He offered no proof as to the circumstances under which he took title from Lee Wade or the consideration he paid. The burden of proof was on him to establish the defense of innocent purchaser, Whayne v. Seamans, 95 Okla. 168, 217 P. 859. Furthermore, Lee Wade was not in possession of the land either in person or by tenant, and plaintiffs were in possession by their tenant, and Charles H. Wade thereby had constructive notice of plaintiffs' claim of title. Higgs v. Renfrow, 195 Okla. 545, 159 P. 2d 749.

Judgment affirmed.

GIBSON, C. J., and OSBORN, BAYLESS, WELCH, DAVISON, and ARNOLD, JJ., concur.