BELL v. PROTHEROE.

No. 32854.    Jan. 13, 1948.

*188 P. 2d 868.*

C. C. Andrews, of Bethany, and Lee Gill, of Oklahoma City, for plaintiff in error.

W. H. Brown, Paul G. Darrough, and Virgil R. Ball, all of Oklahoma City, for defendant in error.

LUTTRELL, J. This is an action to quiet title and cancel deeds brought by plaintiff, Margaret E. Protheroe, against defendant Ora Ethel Bell. The case was tried to the court as one of equitable cognizance, judgment was rendered for plaintiff, and defendant appeals.

From the record it appears that the following facts were established by the evidence: Plaintiff was the stepdaughter of Lewis J. Bell, who, in his lifetime, acquired title to two lots in Oklahoma City, upon which was a duplex dwelling house. Bell made his home with his stepdaughter and her husband, and she and her husband rented the property and looked after it for Bell. On July 1, 1944, plaintiff and Bell entered into a written contract whereby Bell agreed, in consideration of her past assistance to him in looking after the property, and in other ways, to deed her the property with the understanding that he should be entitled to the rents and profits therefrom during his lifetime. The contract further provides that a warranty deed to plaintiff should be delivered to the Liberty National Bank, to be held by it with instructions to deliver it to plaintiff in the event of the death of Bell, Bell expressly waiving and relinquishing any right to withdraw the deed from the bank. Pursuant to the contract and on the same date Bell executed and acknowledged a general warranty deed with no reservations or exceptions, other than "Subject to mortgages of record" to plaintiff, as grantee. This escrow was accepted by the bank and the deed and a copy of the contract held by it were delivered to plaintiff after Bell's death in 1945.

Defendant was a sister-in-law of Bell living in Bentonville, Ark. In 1944 Bell spent a part of his time in Arkansas, and for at least a portion of that time, while ill, made his home with defendant and her husband and was nursed and cared for by them. Defendant testified that he came to her home around the 1st of April, 1944, and stayed there about six weeks, and that four or five times thereafter he was bedfast in her home for as much as a week or ten days. On August 22, 1944, Bell made a warranty deed to defendant purporting to convey the property herein involved, but in which the property was defectively described. This deed was not placed of record. On November 14, 1944, Bell executed and placed of record a deed conveying the property to defendant, in which, due to a mistake, it was described as the homestead of Bell. On March 28, 1945, Bell executed and placed of record a correction deed in which the property was correctly described and which recited that it was not his homestead. On November 14, 1944, he made and delivered to defendant a bill of sale of the furniture and equipment in the duplex on the property involved. He died on May 6, 1945.

Plaintiff testified that on July 1, 1944, after the deed and contract between her and Bell had been placed in the bank, she notified the tenants in possession that she had purchased the property and assumed full possession and control thereof; that she had no knowledge of the defendant's deed until sometime in March, 1945, and that from and after July 1, 1944, she continued to send Bell the rents from the duplex in accordance with their contract, deducting therefrom certain necessary expenses in connection with the upkeep and repair of the property; that in this respect her handling of the property was the same as it had always been, and that where repairs were made on the property which could be made by her husband she did not charge Bell

anything therefor. One of her tenants testified that on or shortly after July 1, 1944, plaintiff informed him that she had purchased the property, and that from that time he dealt with her as the owner; also that he informed a party who interviewed him and who contemplated purchasing the property from defendant, that he had been paying his rent to plaintiff and that such party should see plaintiff before making any deal. The prospective purchaser testified to the same effect, and stated that upon finding that plaintiff also claimed the property, she withdrew her offer of purchase which she had theretofore made defendant.

Defendant testified that she had no knowledge of any contract between plaintiff and Bell with reference to the property until March, 1945, although she had an "inkling" that Bell had made some sort of deal with plaintiff in reference to the property about the 1st of December, 1944. She testified that she knew Bell was receiving the rents which were forwarded to him by plaintiff. So far as the record shows defendant did not inquire of Bell as to who was in possession of the property, nor did she inquire of the tenants as to their ground, source, or right of possession.

The trial court found that the evidence in the case established a good and sufficient consideration moving to Bell from the plaintiff for the contract and deed placed in escrow, and also established a good and sufficient consideration moving from the defendant to Bell for the deeds made by Bell to her. It found the issues generally in favor of plaintiff; found that the contract and warranty deed constituted a good and valid conveyance of the property to plaintiff and that defendant acquired no rights in the property under the deeds made by Bell to her; canceled her deeds; found that plaintiff was the owner of the property and had been in possession thereof since July 1, 1944, subject only to the obligation to account to Bell for the rents and profits therefrom during his lifetime, and quieted the title in plaintiff.

The decisive question presented is whether defendant was an innocent purchaser for value without notice. The trial court found that she paid a sufficient consideration for her deed, but found from the evidence that she was charged with notice of the prior right and equity of plaintiff. Defendant further contends that when Bell placed in escrow in the bank the deed and contract made with plaintiff, that if title passed to plaintiff it passed subject to a life estate retained by Bell, citing in support of this assertion Maynard v. Hustead, 185 Okla. 20, 90 P. 2d 30, and other cases so holding.

In the instant case, however, the contract between Bell and plaintiff was also placed in escrow along with the deed, was a part and parcel of the same transaction, and in arriving at the intent of the parties, the contract and deed must be construed together. Pauly v. Pauly, 198 Okla. 156, 176 P. 2d, 491. The deed on its face is an absolute and unqualified conveyance, and the only provision in the contract with reference to any rights remaining in Bell is the following: " . . . with the understanding, however, that the party of the first part (Bell) shall be entitled to the rents and profits from said property during his lifetime."

Unquestionably the rule announced in Maynard v. Hustead, supra, and other cases, that the delivery of a deed to a third party to be delivered to the grantee upon the death of the grantor operates as a valid conveyance, but that the right to possession is postponed until the grantor's death, contemplates a case in which the grantor either reserves a life estate in his deed, as in Snodgrass v. Snodgrass, 107 Okla. 140, 231 P. 237, 52 A.L.R. 1213, or a case in which there is no other or further agreement between the parties as to possession or right to possession after the placing of the deed in escrow. In the instant case it is worthy of note

that in the contract between Bell and plaintiff there was no reservation of possession or right of possession in Bell. Plaintiff had theretofore been looking after the property for Bell. She testified that immediately upon the placing of the deed and contract in escrow she took possession of the property, and thereafter treated it as hers, although in compliance with the provision in the contract she continued to remit the rents to Bell, who was in Arkansas, and that in her letters she consulted him with reference to certain repairs, such as the repapering of some of the walls, which she understood were to be deducted from the rent.

We think the contract between Bell and plaintiff is reasonably susceptible of the construction placed upon it by plaintiff, and that the parties contemplated that plaintiff should be entitled to possession and control of the property as her property, subject only to the obligation to account to Bell for the rents during his lifetime.

It is further noteworthy that Bell at no time thereafter interfered in any way with plaintiff's possession of the property or attempted to exercise any authority over it. The subsequent acts and conduct of the grantor are to be considered in arriving at the grantor's intent. Anderson v. Mauk, 179 Okla. 640, 67 P. 2d 429. We think that from all the evidence the trial court was justified in drawing the conclusion that Bell did not reserve a life estate in the property, or the possession thereof, and that under the contract plaintiff was justified in taking and did take possession of the property. The trial court's finding in this respect is not clearly against the weight of the evidence.

It is the general rule that the possession of real property by a tenant is sufficient constructive notice of the title and rights of the landlord to put a prospective purchaser on inquiry. 66 C. J. p. 1177, §1022, 27 R.C.L. p. 726, §490, 32 Am. Jur. p. 43, §19. This rule

has been adopted by this court and repeatedly affirmed in numerous decisions. Wade v. Burkhart, 196 Okla. 615, 167 P. 2d 357; Tittle v. Robberson, 143 Okla. 97, 287 P. 1011, and cases cited. These decisions place upon a prospective purchaser of land, in the possession of any person save his vendor, the obligation to inquire of the party in possession of the rights he claims and under whom he claims, and charges the prospective purchaser with any notice which he would have received had such inquiry been made. The testimony of the tenant in the instant case clearly discloses that if defendant had made inquiry of him she would have been apprised of plaintiff's claim of ownership. The defendant made no such inquiry of the tenant, nor so far as the record shows, of any person. To excuse her failure to inquire she calls attention to the statement in 32 Am. Jur. p. 44, §19, that a purchaser is not put upon inquiry by the continued possession of a tenant who was in possession prior to the transfer of title by an unrecorded instrument. This exception to the general rule in some cases is noted in 66 C. J. p. 1177, §1022. It is criticised in Tiffany on Real Property (3d Ed.) vol. 5, p. 71, §1291, for the reason as stated by the author that it assumes that the prospective purchaser has notice of the prior state of the title. We think it subject to the further criticism that it would require a purchaser under an unrecorded instrument to oust the tenant in possession and create a new tenancy in order that his possession might be notice to the world.

In Jones v. Sharp, 183 Okla. 22, 79 P. 2d 585, we held that possession by a tenant who had occupied the premises prior to the transfer of title did not relieve Sharp, the subsequent purchaser, of his duty to inquire, and that he was charged with notice that Jones had theretofore purchased the property, although the conveyance to Jones had not been placed of record. We think this case announces a correct rule; that

the duty to inquire of those in possession, other than the vendor or his immediate grantor, is absolute, and that in such case a prospective purchaser is charged with notice of every fact which such an inquiry would have divulged.

What we have said above substantially disposes of the case. Defendant makes several miscellaneous contentions: (a) that the testimony of plaintiff and her tenant as to her taking possession was not competent; (b) that the trial court erred in refusing to permit defendant to testify as to what the other considerations mentioned in her deeds were; (c) that the consideration of plaintiff's contract and deed was for services already performed which did not constitute a good consideration, and (d) that defendant having performed a large part of her services prior to the time Bell made the contract and deed to plaintiff had a superior equity.

These contentions are without substantial merit but will be noticed briefly. The testimony of plaintiff's tenant was certainly competent to establish the change of possession, and no authority holding otherwise is cited by defendant. The testimony of defendant as to the considerations mentioned but not specified in her deeds could well be considered as relating to a transaction or communication had with deceased. However, in this respect the evidence was amply sufficient to show that the other considerations mentioned were services and nursing performed by her, and the finding of the trial court that the consideration moving from her to Bell for the deeds was sufficient makes the error, if any, harmless. The contention that the consideration moving from plaintiff to Bell was past services is rebutted by the contract itself, which in addition to such past services places upon plaintiff the obligation or duty of renting the property and forwarding the rents to Bell during his lifetime. The trial court evidently assumed that the equities of the parties were equal, and certainly there is nothing in the record to substantiate defendant's contention that her equity was prior and superior to that of plaintiff. Defendant admits that while Bell was at her house he paid her $5 a week for room and board, and she also received a bill of sale to the furniture in the duplex. Whether she received other remuneration for her services or not, she did not come out of the transaction empty handed.

The finding and judgment of the trial court in favor of the plaintiff were not clearly against the weight of the evidence.

Affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, WELCH, CORN, and GIBSON, JJ., concur.