**STANDARD PARTS COMPANY,**
Plaintiff in Error,

v.

**D & J INVESTMENT COMPANY,**
Defendant in Error.

No. 36028.

Supreme Court of Oklahoma.

Sept. 27, 1955.

Samuel A. Boorstin, Jerry M. Melone, Deryl L. Gotcher, Tulsa, for plaintiff in error.

Sanders & McElroy, Tulsa, for defendant in error.

JACKSON, Justice.

This is an action in ejectment by D & J Investment Company, as plaintiff, against Standard Parts Company, as defendant, for possession of a tract of land 50 by 60 feet in Tulsa, Oklahoma. From an adverse judgment, defendant appeals. The parties will be given their trial court designations.

The plaintiff bought this property from David H. Sanders and wife, on October 29, 1948, who in turn had acquired the property by deed from E. L. Stites and Delight L. Stites on September 15, 1948, following negotiations which started on or about July 29, 1948.

After Sanders had started negotiating for the land through a real estate agent he discovered that the defendant, Standard Parts Company, was occupying the premises, under a lease agreement with Stites and wife which was in writing and duly filed of record. The lease agreement was dated March 28, 1947, and provided for a primary period beginning April 1, 1947, and ending January 31, 1948, at the rate of $25 per month. The lease further provides:

"* * * Lessors do hereby grant an option to the Lessee for an additional period of three (3) years beginning February 1, 1948, for a similar monthly rental of Twenty-five ($25.00) per month thereafter and in addition thereto does grant to the Lessee an additional option for five (5) years thereafter for a similar monthly rental of Twenty-five Dollars ($25.00) per month, * * *."

The lease further provides that any structures put upon the land during the period of the lease or any extension or renewal

thereof may be removed by lessee during such period of lease or any extension or renewal. Defendant agreed to pay any taxes upon the premises resulting from any improvements placed on the land by lessee. The lease contract made no provision as to how or when the options would be exercised but is completely silent thereon.

Immediately following execution of the lease contract the defendant constructed a quonset hut upon the property at a cost of $5,700 and used it for storage of automobile parts ranging in value from $40,000 to $75,000. The building was situated in rear of and across the alley from defendant's automobile parts business.

Defendant occupied the premises as lessee during the primary period, regularly paying the monthly rental, and nothing was ever said by Stites, as lessor, nor by the president or manager of defendant company, as lessee, as to whether defendant would exercise its three-year option, but following the primary period defendant did continue to pay the monthly rental and carry large stocks of parts in the building which defendant had constructed upon the lot in question.

Under this set of facts the trial court held that defendant had not exercised its option to extend the lease and became a tenant at will on and after February 1, 1948, under the provisions of 41 O.S.1951 § 2, which provides in part as follows:

"§ 2. Tenant holding over as tenant at will—Expiration of unwritten contract.—When premises are let for one or more years, and the tenant, with the assent of the landlord, continues to occupy the premises after the expiration of the term, such tenant shall be deemed to be a tenant at will; * * *."

In Turner v. Wilcox, 32 Okl. 56, 121 P. 658, 40 L.R.A.,N.S., 498, in construing this section prior to its amendment in 1911, this court said in the body of the opinion that this section has reference solely to those cases where there is no agreement between the parties, or rather to those cases where nothing has been said by the parties relative to the same.

In Livingston v. Indian Territory Illuminating Oil Co., 10 Cir., 91 F.2d 833, 834, the court said:

"Where a lease contains a provision authorizing extension at the option of the lessee, and does not require notice of election to extend, retention of possession creates a presumption that he has exercised the election and holds under the terms of the extension provision. Turner v. Wilcox, 32 Okl. 56, 121 P. 658, 40 L.R.A.,N.S., 498; * * *. But, such possession is not conclusive as an election. * * *"

In 51 C.J.S., Landlord and Tenant, § 77, p. 628, it is said:

"Where a lease provides that the tenant may at his option have an extension for a specified time after the expiration of the term of the lease, or may occupy for an extended term, including that specified in the lease, the mere holding over after the expiration of the specified time is generally held to constitute an election to hold for the additional or extended term, particularly where coupled with the payment and acceptance, or tender, of the rent fixed in the option."

We are of the opinion that 41 O. S.1951 § 2, supra, has reference to those cases where the contract has expired by its terms and there is no agreement between the parties for a continued occupancy and is not applicable in this case since there is a written agreement between the parties for an additional period of three years. We think it is clear that defendant's holding over under all the facts in this case constitutes an election to continue the lease under the option.

During the negotiations between Sanders and Stites the president of defendant company learned that Sanders was purchasing the tract in question but made no statement to Sanders with reference to exercising the option of defendant to extend the lease. Nor did Sanders ever talk to the president of defendant company, or its manager, Mr. Puryear. The trial court seems to be of the opinion that it was the duty of defendant's president, having such

knowledge, to seek out Mr. Sanders and inform him that defendant company had exercised its option. We cannot agree with such a conclusion. Having held that defendant had exercised its option, a transfer of title would not conflict with defendant's rights as a tenant. The recorded lease and possession by defendant would infer that defendant had exercised its option and the duty was upon Sanders, the prospective purchaser, to inquire of the defendant in possession of the rights it claimed, and the law charges the prospective purchaser with notice of whatever rights persons in actual possession may possess. See Wade v. Burkhart, 196 Okl. 615, 167 P.2d 357, and Bell v. Protheroe, 199 Okl. 562, 188 P.2d 868, 1 A.L.R.2d 315.

While Sanders did not make inquiry of defendant's president or manager, he did call upon his realtor for information in writing as to whether the three-year option had been exercised. The realtor called upon Stites for "something" in writing and Stites went to defendant's place of business, talked with the office manager, R. W. Milbourn, and asked him for a letter as to how the defendant was paying the rent. Milbourn signed and delivered to Stites a letter on company stationery which reads:

"On a monthly rental basis of $25.00 a month, we are now occupying a lot described as follows: East 60 feet of the South 50 feet of Lot 5, Block 183, Original Town, now City of Tulsa, Tulsa county, Oklahoma."

The evidence shows that this letter was delivered to Sanders and the trial court found that Sanders relied upon the letter in purchasing the property.

The proof fails to show that Milbourn had any authority to write this letter. He had not been directed by his superiors to write it. There was nothing in the office that would indicate whether defendant had or had not exercised its three-year option, and Milbourn had never obtained this information from the president or manager of the defendant company. It was Sanders who sought this letter and selected the means by which he would obtain it. Milbourn never mentioned this

letter to defendant's president or manager and they had no knowledge of it. The trial court held that as between two innocent persons, the one whose employee commits an act to the detriment of the other must suffer.

We do not believe that Sanders would be justified in relying upon the letter from Milbourn under the facts in this case. Milbourn's title is not shown upon the letter. He was not an officer of the company and was not its general manager. He was an office employee having supervision over two or three other employees.

Since Sanders' only contact with defendant corporation was through Mr. Stites, we feel it would be appropriate to give a few excerpts from Stites' testimony. His testimony sheds light upon the procurement of the letter, as well as other issues material to this case. He was called as a witness for plaintiff and testified as follows:

"Q. Mr. Stites, when was it first called to your attention that Standard Parts thought that they had a lease on this property which was in full force and effect after you had sold it, or during the process of the sale to David Sanders? A. Well, I am trying to remember, trying to recall now when I believe the first instance of the question arose, but I believe the first instance of the question arose at the time that the purchaser of the property had suggested revoking the lease, or breaking the lease. * * *

"Q. Before that time how did you think the property was being rented? A. Well, I just assumed the lease was still effective as far as that goes.

"Q. On a month to month basis? A. On a month to month basis. I knew the lease was effective on the option of course, but the option had never been exercised, and they were paying and I was receiving the rent, and it was fully stocked, and I had nothing to worry about, and I had given it no consideration. * * *

"Q. Well, did you ask him (Mr. Milbourn) to write in a letter how he was renting the property? A. Yes,

I think that was .it. As I .recall we talked of the rental, how—how it was operated and how 'they were paying rent on the building irrespective of a renewal on the lease.

"Q. When you say 'irrespective'—'irrespective of the renewal of the lease', did you discuss the lease? A. I think I had informed him, or prior to that time, that the lease had expired, and their option should be taken up on it, and that we had had no notice of either cancellation or renewal of the option on the lease, and that's why I had asked for this letter to show they were paying rental from month to month on the building. * * *

"Q. What, if anything, do you remember he said to you at that time?' A. Oh, as I recall, he said there was no doubt that they would exercise their option on the lease, and the building was occupied and in use, and they would continue paying rent on it until such time as they could get to renewing the lease, and he questioned, as I did myself, at that time whether it was necessary for a written renewal or continuance of paying as they were so long as everything was handled in the manner we were supposed to be handling on the lease by either of us. * * *

"A. He was going to call it to the attention of Mrs. Dannenburg (President) or their manager there— I can't recall his name right now—

"Q. Puryear. A. Mr. Puryear * * *." .

The evidence failed to show that it was ever called to their attention.

From the foregoing we think it is apparent that Sanders was mislead by Stites, rather than by Milbourn, if he was mislead.

We hold that Milbourn was not acting within the scope of his authority in writing the letter and the defendant corporation is not therefore charged with knowledge thereof.

Plaintiff cites numerous authorities supporting the proposition that when a corporation holds out a person as a manager having *general* authority to act for it in its business, third persons may safely deal with the agent in the transaction of the corporation's business. We agree with this contention and with the authorities cited. However, it must be observed that Milbourn is only the office manager and that Puryear is the manager of defendant company having general authority. The evidence shows that Mr. Stites knew that Puryear was the general manager at the time he procured the letter from Milbourn.

For the foregoing reasons the cause is reversed and judgment rendered for the defendant below, Standard Parts Company.

WILLIAMS, V. C. J., and CORN, DAVISON, HALLEY and BLACKBIRD, JJ., concur.